DANIEL CORY v.˙BOARD OF CHOSEN FREEHOLDERS OF THE. COUNTY OF SOMERSET.

1. After joinder in error it is too late to object that bills of exceptions regularly obtained were not annexed to and returned with the writ.
2. Orders to amend the bill of particulars are not the subjects of a writ of error.
3. When the mode of corporate action prescribed in the charter is not intended as a restriction of its authority, it can ratify an act done in a different mode.
4. When work on a bridge costing less than $500 was not ordered by the freeholders of the townships designated by the act, but by some of such officers in conjunction with a freeholder of a different township, and such work was honestly done and paid for—*Held*, such transaction could be ratified by the board of chosen freeholders.

---

This was an action of *assumpsit*, brought by the board of chosen freeholders of the county of Somerset, against Daniel Cory.

. The declaration contained simply the common counts Upon demand a bill of particulars was furnished, and the

amount claimed was $6656.56, embracing bills between May 4th, 1868, and January 5th, 1871.

The claim against the defendant below was that he had received the money upon these bills improperly and wrongfully, and should refund the same to the county.

The case was referred and tried and report set aside; again referred and order of reference set aside, and was tried at the December Term, 1880, of the Somerset Circuit, before Justice Magie and a jury.

A verdict was rendered for the plaintiffs below for the sum of $4800.91, and a writ of error was taken to this court.

Argued at June Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and PARKER.

For the plaintiff in error, *A. A. Clark* and *B. Williamson.*

For the defendants in error, *J. N. Voorhees.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This case comes before the court by virtue of a writ of error to the Circuit Court of the county of Somerset, and the grounds of the errors that have been assigned are contained in the several bills of exceptions which are on file with the other papers in the cause.    On the side of the defence a preliminary motion was made to strike out these bills, or to induce the court to decide that the assignments based upon them must be disregarded.    Inasmuch as there are no errors that are alleged to exist in the record itself, this application, if acceded to, would dispose of the suit as it exists in its present form before the court.

The ground taken in favor of this motion is that the bills of exception in question have not been transmitted to the court at the time and in the manner required by the two hundred and forty-fifth section of the Practice act, (*Rev.*, *p.* 887,) which declares that "every bill of exceptions shall be returned and filed with the writ of error and record in the case; and un-

less so returned and filed, the judgment shall not be reversed, nor shall there be any assignments of error for any matter contained therein." This is a plain regulation by the legislature of the practice of the court, and the defendant has the right to require its exact enforcement, unless, by his own conduct, he has dispensed the court from looking into the point. And it is, in truth, upon this ground that the plaintiff in error relies as an answer to the objection thus taken, for he insists that the defendant, by putting in the plea of *in nullo est erratum* to these assignments of error, has lost all right to criticise the form of their introduction into the case.

In disposing of this question, it must be assumed that these bills have been properly obtained and legally executed, for, although they were evidently signed by the judge long after the term at which the trial occurred, the only admissible inference, in the absence of all evidence upon the subject, is that such act was warranted by the circumstances. On the basis, then, of the bills being in themselves in all respects formal and legal, the point is are they to be set aside on the sole ground that they were not returned to the court simultaneously with this writ of error? The complaint is that a statutory form has not been complied with.

The objection, I think, should not prevail. This default of the plaintiff in the conduct of his cause has been waived by the act of the defendant in passing by the irregularity without notice, and putting in a plea to the assignments thus informally made. It was certainly competent for the defendant in error to adopt the course of taking the issues thus tendered if he saw fit so to do, instead of moving to vacate them by force of the statute. The right to object to an irregularity of this kind must cease at some stage of the proceedings, and it appears to me that it would be altogether unreasonable to continue such right after the taking of so decisive a step as this on the part of the defendant. The plea to the assignments is a conclusive admission that they are properly in the case.

In opposition to this view, the counsel of the defendant in

error has appealed to the authority of the case of *Agnew* v. *Campbell*, 2 *Harr.* 291, in which it was decided that a bill of exceptions obtained on an *ex parte* application after the term of the trial, and not being made in pursuance of a valid understanding between counsel, would be set aside even after the assignments in error had been pleaded to. But that case is not the parallel of this one, for in it the defect was in the mode of obtaining the bill itself, the circumstances raising a doubt as to the fairness of the transaction, but in the present instance the entire objection is that, admittedly, legal bills were not returned at a particular moment. It is not my intention to call in question the propriety of the decision referred to, though it may not be amiss to say that it has but slender extraneous authority in its favor; that it establishes a rule unnecessarily onerous on the plaintiff in error, as it subjects him to delay and costs, and that it infringes on the ordinary rule of practice which requires that a party intending to object to a slip of his opponent, or to an irregularity in the procedure, shall do so at the earliest opportunity. But I think the rule of practice thus introduced should not be extended to a different class of cases. It is applicable to bills not properly obtained, but not to bills which have been properly obtained but which have not been properly returned.

This point is not well taken.

Turning, then, to the assignments of error in connection with the bills of exceptions, I find but two of the objections taken to the proceedings at the trial which appear to be of such solidity as to require discussion or a statement of the grounds of decision.

The first of these is the exception to the admission of evidence touching certain items contained in two amendments to the bill of particulars which was originally furnished by the plaintiff in the court below.

The case shows that this suit had slept, by consent of the parties, for several years, and after such interval of time, an application was made to one of the justices of this court to amend the primary bill of particulars, and such application

was granted. Subsequently, a second application of the same kind was attended with a similar result. On each of these motions the counsel of the respective parties had a hearing. In pursuance of the authority so given, new bills of particulars, containing fresh items, were drawn up and served. Among these items thus for the first time introduced were some which would have been barred by the statute of limitations, if a suit had been brought upon them at the date of the furnishing of these amended bills, but none of them extended back six years anterior to the bringing of the pending suit. At the trial, when proof of some of such items was offered, objection was made, on the ground that the introduction of such fresh claims at so late a stage of the proceedings was unjustifiable, and that the amendments were illegal. The objection was overruled, and hence the exception now in question.

It is thus insisted that this court is bound to review on this writ of error the two judicial orders which authorized the amendments above described.

But the position is plainly untenable. Even if this court were empowered by the express terms of a statute to supervise orders of this character, as this case is now presented, that function could not be discharged. The court might, indeed, render a blind judgment in this respect, but it could not, in any reasonable sense, revise the decisions in question, for it is not in possession of the facts on which such decisions proceeded. There is nothing here present to show what were the circumstances, either proved or admitted, before the justice which induced him to yield to the application for these amendments. In the absence of proof the legal presumption must be that this judicial action was based on solid grounds. That such grounds may have existed is apparent, for it cannot be rationally contended that additions such as these could not lawfully be made to a bill of particulars in any possible condition of affairs, such as, for example, the case of items omitted from the particulars by reason of the fraudulent practices of the defendant. The fact that the superadded items are of long standing, and, on account of the statute of

limitations, would not support an action, affords no obstacle to an introduction of them, by way of amendment, into the bill of particulars. On the contrary, that characteristic has often furnished a motive to the courts to listen favorably to a motion to effect that end. In the case of *Jones* v. *Corry*, 6 *Bing. N. C.* 247, this consideration appears to have had weight. There the application was to amend the particulars by adding items of more than six years' standing, and it was urged, as it has been in the present case, that to allow such matters to be introduced into the litigation was giving indirectly to the plaintiff the benefit of bringing a new action; nevertheless, the motion prevailed, one of the judges remarking, " as to the objection that the defendant would be able to plead the statute of limitations to a fresh action, and that, therefore, the plaintiff ought not to be allowed to include the whole of his demand in this, the courts have allowed amendments to prevent the statute of limitations from attaching, but I never heard of their refusing an amendment in order to give effect to that statute." Another authority in the same vein is that of *Staples* v. *Holdsworth*, 4 *Bing. N. C.* 717, in which the plaintiff, in an action for money had and received, was allowed, after a suspension of proceedings for ten years, to enlarge his particulars, by the insertion of new items recently discovered. Such, beyond all question, was the practice at common law, and there is no provision in the Practice act restrictive of such power. The consequence is that, as the judge who made these orders was competent to do such acts, and as the circumstances which led to such action do not appear on this record, it would follow necessarily, even if we concede to this court an appellate power in the premises, the orders in question could not be disturbed.

But I think it likewise plain that, according to legal principles long since settled by a course of decisions in this state, this is not a subject that falls under the cognizance of this court. A writ of error will not lie to remove for review, directly or indirectly, orders of this character. It was long since decided by this court in the case of *Den, ex dem. Ruther-*

*ford,* v. *Fen,* 1 *Zab.* 700, that to become the object of a writ of error the decision sought to be reviewed must be a judgment, or an order or award in the nature of a judgment. An order to amend a bill of particulars has nothing of such semblance; it relates purely to the remedy, and it settles no right that is in controversy, and is as truly an interlocutory order as is a rule extending the time to plead. It is identical in its nature with an order to alter the pleadings in a matter of substance, and that this latter class of orders are not reviewable in a higher court has been settled in *Bruch* v. *Carter,* 3 *Vroom* 554, by the court of last resort in this state. A striking example of the force of this doctrine is presented in a case decided by the same court in the case of *United States Watch Co.* v. *Learned,* 7 *Vroom* 429, where, at the Circuit, a motion having been granted to change at the trial a suit of covenant into *assumpsit,* it was declared that such order was discretionary and could not be reviewed on error. I regard this point as, substantially, *res adjudicata.*

The second considerable exception relates to one of the legal propositions contained in the charge of the judge at the trial.

The defendant had been one of the chosen freeholders of the county of Somerset, and the suit was, mainly, to recover various sums of money which it was alleged he had fraudulently obtained on spurious accounts for work pretended to have been done on the bridges of the county. Some of these charges were for repairs costing less than $50, and others for repairs costing less than $500 and more than $50.

Section 2 of the act respecting bridges provides "that when the expense of erecting, rebuilding or repairing a county bridge shall exceed $50, and be less than $500, it shall be the duty of the overseer of the highways within whose limits or division the same may be, or either of the overseers of the highways of the adjoining townships, to give notice, in writing under his hand, to the chosen freeholders of such township and of the two next adjoining townships, and in such notice to appoint the time and place of their meeting, and the said

chosen freeholders, or a majority of them, are hereby authorized to order, if they think proper, the said bridge to be built, re-built or repaired, and to superintend or contract for the doing thereof." And section 3 enacts that when such expense shall not exceed $50, it shall be lawful for the overseer of the high-ways within whose division the bridge may be, and the two freeholders of the same township, or the major part of them, to direct such repairs to be done. Among the claims in suit were sundry moneys which it was asserted had been paid to the defendant for work done by him on the public bridges, and which work had not been ordered in conformity to either of the foregoing provisions. And in support of that conten-tion, there was evidence tending to show that some of such payments had been made for repairs, the cost of which had been less than $50, and that it was in doubt whether such work had been performed by the direction of an overseer of the highways and the two proper freeholders; and that in other cases where the cost had exceeded $50 and had fallen short of $500, it was not clear that all the freeholders of the three townships designated in the statute had ordered such expense to be incurred. In truth, in one of the latter class of cases it affirmatively appeared that in consequence of the sickness of one of such officers, a freeholder from another township had taken his place. It was thus a question at the trial, whether certain parts of the work in question for which the defendant had been paid had been ordered to be done by those particular officers to whom the statute confided the power to deal with the matter. At the trial, the court regarded such orders as altogether illegal, and that the moneys paid to the defendant for work done in pursuance of them could be recov-ered in the action, and that such was the legal result, even though the jury should be satisfied that such transactions had been subsequently ratified by the board of chosen freeholders itself. The effect of this interpretation of the act was to deny that there existed any competent authority to validate pay-ments for work of this description done in good faith, and the full benefit of which had enured to the public, provided there

was any defect in the authority under which such expense had been incurred.

To this construction of the statute I am unable to agree. It appears to me to be opposed to the legislative design, as it is manifested in the several acts relative to this subject. By the statute constituting the board of chosen freeholders, that body is made the agent of the county for executing all its legal purposes, objects, business and affairs, and is authorized to " vote, grant and raise " such sums as it may deem adequate for the building, purchasing or repairing of poor-houses, jails, court-houses and bridges, "and for defraying the public and necessary charges," and to see to the disbursement of such moneys. It is apparent, therefore, that if this act stood by itself, and out of connection with other legislation, that the power of this body thus constituted over the entire subject of the building and reparation of bridges, would be unquestionable, and the question, therefore, arises whether this authority thus broad and thus plainly granted is trammeled or curtailed by the provisions of the bridge act which are above quoted. I see no reason to suppose that such was the purpose of that legislation. It seems unreasonable to attribute to the legislature the design, when it empowered certain members of the board to deal, in their discretion, with particular matters of minor importance, to circumscribe by such an adjustment the power of the corporate body. As a matter of convenience such an arrangement was obviously judicious, but as a limitation on the authority of the corporation, unnecessary and worse than useless. We can readily understand why those freeholders living in the neighborhood of a bridge requiring repairs at a cost not more than $500, should be authorized to direct such work to be done, because such a power dispenses with a convocation of the entire board, and is in ease of the execution of the official duties imposed by the act, but it does not follow that such a power is exclusive of the power of the board. The act relating to the chosen freeholders and the act relating to bridges are *in pari materia,* and are, therefore, to be harmonized as far as possible, and as the former gives to the

freeholders as a body the general power to raise the necessary moneys for bridges, and to spend it at their discretion, such a grant of power will not be cut down or impaired by doubtful indications in the latter act, or by anything short of express provisions or necessary implications. Because certain freeholders are authorized to order a bridge repaired when the cost does not exceed the sum of $50, gives rise to no intendment that the right to order a similar work to be done was meant to be taken from the corporate body. The opposite view would often work inconvenience and injustice, of which this case, in the aspect of it now under consideration, presents a conspicuous example, for if the defendant has done the work in question at fair prices, in the belief that it had been legally ordered, and has been paid for it, and such payment has the sanction of the board of freeholders, still, according to the construction acted on at the trial, he could not retain such moneys, and nothing short of an act of the legislature would enable him to do so. It would be much to be regretted if these public bodies were without the power of doing ordinary justice in these affairs, which must occur not infrequently. But, I think a proper construction of this scheme of legislation does not produce such an undesirable result.

In the case of *Morrell* v. *Dinfield*, 30 *Me.* 157, a question similar to that above discussed was presented for decision to the Supreme Court of Maine. By a statute of that state a surveyor of the highways was authorized, when out of means, to employ, "with the consent of the selectmen obtained in writing," persons to do the unfinished work, and, in the reported case, that officer incurred such expense without the written consent required by the act, and, in the opinion of the court, it is treated as incontrovertible that, under such circumstances, a legal debt would have been imposed upon the county if the transaction had been subsequently ratified by the body of the selectmen. There was no suggestion in the case that the power given to the overseer to act in the matter under the written consent of the designated officers,

was a limitation on the general power of the corporation over the subject.

With respect to the power of a corporation to ratify contracts which have been irregularly entered into in their behalf, the rule of law is now clearly defined in the books. These decisions do not leave it in doubt that when the charter authorizes a contract to be made by the corporate body in a certain mode, whereby the power of such body is intended to be limited, its officers and agents cannot bind it in any other manner. In such cases only a limited power is granted, and consequently an act done beyond the scope of such power is void. Illustrations of this doctrine are to be found in those cases in which, as in the case of *Brady* v. *Mayor, &c., of New York*, 20 *N. Y.* 312, it is required of the corporate body to put out the public work to the lowest bidder, for as such a requisition is a circumscription of the power of the corporation, it has invariably been held that any other method of contracting is illegal, and consequently cannot be subsequently validated by a ratification. The rule of law is, that it is only when the corporation has the right to enter into the given contract that it can legalize it after it has been performed under an authority of its unauthorized agents. In the present case, therefore, if the work in question were illegally ordered, the subsequent assent of the board of chosen freeholders would convert the money so earned into a legal debt.

My conclusion is, with respect to the claims in question, the jury should have been instructed that if they believed such claims to be honest, and that the transactions out of which they arose, even though the original orders for the work had been irregular and not legally authorized, had been ratified by the board of chosen freeholders, the plaintiff, so far forth, was not entitled to recover.