SAMUEL SERRITELLA, PROSECUTOR, v. WATER COMMISSION OF THE CITY OF GARFIELD ET AL., RESPONDENTS.

Argued January 21, 1942—Decided March 30, 1942.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutor, *Charles Bernstein* (*Warren Dixon, Jr.,* of counsel).

For the respondents, *Henry L. Janowski* (*Jack Rinzler,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The basic question requiring decision is whether the dismissal of prosecutor, a war veteran and an exempt fireman, without charges or hearing, from his capacity as an operator at the East Paterson pumping station of the water department of the City of Garfield, was improper.

The governing body of the City of Garfield, by ordinance, placed the management and operation of its water plant under the control of a board variously described as "Water Plant Commission" and "Water Commission." We shall hereafter refer to it in the manner lastly stated.

On March 11th, 1938, the Water Commission appointed prosecutor as a meter repair man, without a fixed term, at the salary of $150 a month. He was a veteran of the last war, and the holder of a Firemen's Exempt Certificate. He worked in that capacity (meter repair man) until September 1st, 1938, when a rather anomalous thing, to say the least, happened. By private arrangement, he effected a trade of his status with one Salvatore Scazzaro who then occupied the status of an operator at the plant receiving $175 a month. Apparently the reason for the change was that a meter repair man worked 5½ days a week (he did not work on a Saturday afternoon nor on a Sunday), while an operator then worked seven days a week, and Scazzaro did not like to work on Sundays. Notice of the trade was given to the governing body of the City of Garfield. Thereafter the prosecutor was included on the payroll of the city as an operator and was paid accordingly. Prosecutor continued in his traded status until November 28th, 1941, when the Water Commission notified him that it had adopted a resolution discharging him (without charges or hearing) effective December 15th, 1941.

Prosecutor then sought and obtained a writ of *certiorari* to review his discharge.

Prosecutor contends that as a war veteran and as the holder of an exempt fireman's certificate his discharge was improper because it was not for "good cause shown after a fair and impartial hearing" and because he was discharged for "political reasons." *N. J. S. A.* 38:16-1 (Veterans Act) and *N. J. S. A.* 40:47-60 (Exempt Firemen's Act).

While there is some proof to support the suggestion made for prosecutor that he was discharged for political reasons, and while there is also some proof to support the suggestion made for respondents that prosecutor was discharged because he occasionally came to work while intoxicated, we do not find it necessary, under the circumstances, to consider either suggestion. For, it is conceded that the "sole question" for decision in the case at bar is whether prosecutor in his "capacity" as an "operator" held a "position" within the meaning of the War Veteran and Exempt Firemen's Tenure Acts. In other words, does the "nature" of the "duties performed by prosecutor" as an "operator" indicate that he held a "position" within the meaning of the aforestated acts? Our answer is in the negative.

1. The determinative characteristics of a position are that they are analogous to the duties of an office in that the duties pertaining thereto are "continuous and permanent," especially pertaining to the position assumed (*Lewis* v. *Jersey City*, 51 *N. J. L.* 240, 242; 17 *Atl. Rep.* 112), or are "permanent and certain." *Fredericks* v. *Board of Health*, 82 *N. J. L.* 200, 201; 82 *Atl. Rep.* 528.

On the day of prosecutor's appointment as a repair man, the Water Commission adopted rules and regulations relating to "operators" and "meter repair men." By these rules it was provided that the Water Commission designate three operators whose duties were to be in charge of the operation of all "water pumps" and "chlorine machines" and the maintenance of them; and that the operators be on duty twenty-four hours a day, each operator devoting eight hours each day, and that meter repair men be in charge of the "installation, repairs and maintenance of all meters."

While it is true that prosecutor as an "operator" was obliged, in addition to his general duties, as defined by the

Water Commission, to keep a record of the electricity, water and chlorine consumed, &c., it is also true that his duties embraced a "great * * * variety of work." He was, as the proofs show and as pointed out for respondents, further obliged to, and did, clean, oil and polish machines, keep the inside and outside of the buildings clean, cut the grass and hedges, take care of the lawn, wash windows, polish brass, oil pumps, grease the shed pumps, clean and sweep toilets, carry ashes and coal, keep the picnic grounds clean, dig up trees, &c., and to do such other things as directed, from time to time, by the superintendent of the plant. Such duties can hardly be said to satisfy the determinative characteristics incident to a position. Such duties are more in accord with those of an employee, a general handyman. Nor was an operator regarded as the holder of a position. For, if so, then, irrespective of the reason given for the private arrangement between Scazzaro and prosecutor, it is difficult to understand Scazzaro's right to appoint prosecutor to that position, or the approval thereof by the governing body. It is interesting to observe that an examination of the record in a recent case against the same Water Commission (*Merrihew* v. *Water Plant Commission,* 120 *N. J. L.* 538; 1 *Atl. Rep.* (2d) 71), discloses that two of the five applicants for rules to show cause why a writ of *certiorari* should not issue to review their discharge, were operators, and two were meter repair men, but all conceded that they "were mere employees" and the case was decided accordingly. *Id.* (at *p.* 539).

We are of the opinion, and so hold, that prosecutor was not the holder of a position within the meaning of the statutes relied upon and our decisions.

2. But even if the duties of prosecutor be considered as characteristic of those incident to a position, our result would be the same. The governing body of the City of Garfield, of course, had the legislative powers to provide and supply water to the municipality and its inhabitants for public and private use (chapter 135, *Pamph. L.* 1899 *pp.* 283, 304, § 53, saved from repeal, *N. J. S. A.* 40 :170-1) ; *N. J. S. A.* 40 :62-47 and *N. J. S. A.* 40 :62-62. In the exercise of these powers, it could, as it did, create, by ordinance, such a board (Water

Commission) as it deemed necessary or convenient for accom-plishing the stated purposes (providing and supplying water), elect the personnel of the water commission, and prescribe their duties. In so doing, it exercised its non-delegable, legis-lative powers. But assuming that the governing body of the City of Garfield, in pursuance of its non-delegable, legislative powers, could have created by ordinance the position of opera-tor here in question, the answer is that it did not in fact create any such position.

Thus nothing that the Water Commission did in acknowl-edging the status of operators, nor in prescribing their duties, could alter the established principle that a position in a municipality can be created in no other manner than by a valid municipal ordinance. There is no such ordinance and, therefore, there is no such position as operator in the water department of the City of Garfield. *Bullock* v. *Jeffries,* 117 *N. J. L.* 595; 189 *Atl. Rep.* 914; *affirmed,*119 *N. J. L.* 27; 194 *Atl. Rep.* 159; *Margerum* v. *Princeton,* 120 *N. J. L.* 36, 38; 198 *Atl. Rep.* 385.

Prosecutor's dismissal was proper. The writ is dismissed, with costs.