71 N.J. Super. 264 (1961)
176 A.2d 821
MICHAEL LA POLLA, PLAINTIFF,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF UNION AND EDWARD A. ROESEL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 13, 1961.
*267 Mr. Anthony Luongo argued the cause for the plaintiff.
Mr. Leo Kaplowitz, County Attorney, argued the cause for the defendant Board of Chosen Freeholders (Mr. H. Lee Sarokin, on the brief).
Mr. John B. Stone, Jr., argued the cause for the defendant Edward A. Roesel (Messrs. Ryan, Saros, Davis and Stone, attorneys).
FELLER, J.S.C.
This is an action in the nature of prerogative writs in which the plaintiff seeks to compel the Board of Chosen Freeholders of Union County to reinstate him to his position as secretary to the Superintendent of Public Works and to oust the defendant Edward A. Roesel from the said position. The said Edward A. Roesel was retired as of September 1, 1961, approximately eight months *268 after his appointment and approximately seven months after the complaint was filed in this action.
The plaintiff contends that on December 22, 1960, by resolution, he was appointed by the Board of Chosen Freeholders of Union County to the position of secretary to the Superintendent of Public Works of Union County to serve at the pleasure of said Superintendent at an annual salary of $7,495; that he performed the duties required of him until January 2, 1961 when the said board of freeholders passed a resolution purporting to rescind and terminate his appointment as secretary to the Superintendent of Public Works; that on said January 2, 1961 the said board of freeholders passed a resolution purporting to appoint the defendant Edward A. Roesel as secretary to the Superintendent of Public Works, effective January 1, 1961, at an annual salary of $7,495; that the said Edward A. Roesel ousted the plaintiff from said position and took upon himself the duties of same and that this was in violation of the bylaws; that among the provisions of said bylaws the Superintendent of Public Works was given the power to suspend all employees subject to the approval of the proper committee or department.
The plaintiff further contends that the board of freeholders lacked the authority to remove him under R.S. 40:21-3; that this statute only provides for the removal of a person who holds an office and does not provide for the removal of an employee or one holding a position; that he does not hold an office and cannot be removed under the provisions of said statute; that he could only be removed by the Superintendent of Public Works as his resolution of appointment provides; that the decision of the Superior Court, Law Division, in the case of Leo Kaplowitz and James J. Kinneally, Plaintiffs v. Board of Chosen Freeholders of Union County and Louis J. Dughi, in which the court declared void and illegal the appointment of Louis J. Dughi to the office of special counsel to the board of freeholders is dispositive of this suit; that the decision rendered in Kaplowitz *269 rendered void the resolution terminating the appointment of the plaintiff and the resolution appointing the defendant Roesel, and also taints every other resolution passed contemporaneously and subsequently, as well as the bylaws adopted on January 2, 1961. The plaintiff demands judgment removing and ousting the defendant Edward A. Roesel from the position of secretary to the Superintendent of Public Works and restoring the plaintiff thereto with all privileges, back pay and emoluments.
The defendant board of chosen freeholders denies the contentions of the plaintiff. However, defendant admits that the bylaws of January 2, 1961 gave the Superintendent the power to suspend all employees, subject to the approval of the Department of Purchasing and Public Property. In addition, the defendant sets up a number of separate defenses alleging that the appointment of the plaintiff to serve at the pleasure of the Superintendent of Public Works was illegal and ultra vires; that it was illegal and void ab initio; that said appointment to serve at the pleasure of the Superintendent of Public Works was an illegal, unwarranted and improper delegation of a legislative function; that the appointment of defendant Edward A. Roesel was valid, legal and permissive; that the removal of the plaintiff was in consonance with the law; that any allegation that the prior litigation arose from the same set of facts and involved common and similar questions of law was erroneous, misleading, immaterial and irrelevant, and the disposition of the same is not binding on this court; that the Superintendent of Public Works never had the power to dismiss an employee, but merely had the power to suspend employees, subject to the approval of the proper committee or department; that the power to employ or dismiss remains and resides with the appointing authority, the defendant Board of Chosen Freeholders of the County of Union.
Substantially the same allegations by way of defense were set out in the answer filed in behalf of the defendant Edward A. Roesel.
*270 The issues are: Did the defendant Board of Chosen Freeholders of Union County have the legal right to remove the plaintiff from his position and appoint defendant Roesel in his place and stead?
The plaintiff introduced into evidence the following resolutions:
The resolution adopted by the board of freeholders on December 22, 1960 appointing plaintiff Michael LaPolla as secretary to the Superintendent of Public Works at the salary of $7,495 per annum, effective December 22, 1960. The resolution further provided that said appointee was to serve at the pleasure of the Superintendent of Public Works.
Resolution adopted by the board of freeholders on January 2, 1961 rescinding the appointment of Michael LaPolla and terminating his services as secretary to the Superintendent of Public Works.
Resolution of January 2, 1961 adopted by the board of freeholders appointing Edward A. Roesel as secretary to the Superintendent of Public Works of the County of Union at the salary of $7,495 per annum, effective January 1, 1961.
The by-laws of the board of freeholders setting out the duties of the Superintendent of Public Works, among which was the power to suspend all employees under his supervision subject to the approval of the proper committee or department.
The plaintiff definitely was qualified for the post to which he was appointed. At the conclusion of the trial, however, this court denied the plaintiff's claim that he was entitled to Civil Service protection. The evidence introduced indicated that the plaintiff  in effect  was appointed for an indefinite term and was placed by the Civil Service Department in the unclassified status, and was in no way subject to the protection of the Civil Service statutes. This court further held that there was no evidence that the plaintiff had acquired tenure under the provisions of any other statute, and thus the protection afforded by the Civil Service statutes did not apply to him. See N.J.S.A. 11:22-2; Mensone v. N.J. Dept. of Civil Service, 30 N.J. Super. 218 (App. Div. 1954); Gallena v. Scott, 136 N.J.L. 70 (Sup. Ct. 1947); Rules 7 and 59 of the Civil Service Regulations.
Decision was reserved as to the other questions raised at the trial.

*271 I.
The defendants contend that the board of chosen freeholders had the authority to remove the plaintiff under the provisions of R.S. 40:21-4 which provides as follows:
"The board of chosen freeholders may, by a majority vote of all its members, remove from office any person holding office in subordination to or by appointment from such board where the term of office is not fixed by law."
The plaintiff, however, contends that the above section relating to removals cannot be read in complete context without referring to R.S. 40:21-3 immediately preceding it  which provides as follows:
"In addition to the officers and employees whose appointment is specifically provided for by law, the board of chosen freeholders may appoint or provide for the appointment of such other officers, agents and employees as may be required for the execution of the powers conferred upon said board or any board or officer within the county."
Thus, the plaintiff contends that R.S. 40:21-3 authorizes the board of freeholders to appoint officers, agents and employees, whereas R.S. 40:21-4 only authorizes the board to remove from office any person holding office and does not apply to employees and agents, and since the plaintiff is an employee and not the holder of an office, R.S. 40:21-4 is not applicable.
According to the evidence, the duties of secretary to the Superintendent of Public Works consist of administrative duties, clerical work, handling of men and clerical records, and on occasion to "take hold of the whole office, other than the administration of it for a while"; keeping work records and absentee records and sick leave records; delegating jobs or functions through the foreman and men themselves when necessary; checking on the night force and responsibility for their activities; responsibility for the supervision and maintenance of the building (court house) as far as the help was *272 concerned; acting as Superintendent of Public Works in the absence of the Superintendent, but not having the responsibility of the Superintendent; relaying commands to subordinates and employees of the office.
A review of the applicable case law leads to the conclusion that some of the duties performed by the secretary to the Superintendent of Public Works relate to those of an office. The duties to be performed, not the mode of appointment, constitutes the test of his being a public officer. Is he concerned with the administration of public duties? Are his duties "governmental" in nature? Is he invested with any position of political power partaking in any degree in the administration of civil government and performing duties which flow from the sovereign authority? If so, his office is a public office. City of Hoboken v. Gear, 27 N.J.L. 265 (Sup. Ct. 1851). See also Uffert v. Vogt, 65 N.J.L. 377 (Sup. Ct. 1900); Hardy v. Orange, 61 N.J.L. 620 (E. & A. 1898).
The trend of the New Jersey cases indicates a tendency in favor of a broad scope for the area of "governmentality." No one would argue that a government typist is sharing in "sovereignty," but certainly many government clerks and their assistants are doing so, especially at municipal level. The New Jersey rulings conferring "office" status show that in this State the "official" character attaches to a wide and varied range of municipal and other posts. It attaches to such remotely "governmental" posts as that of water purveyor and fireman. The "official" status attaches in New Jersey also to custodial and to a number of secretarial and recordational posts. Nor is the "official" status denied in New Jersey to holders of various posts who occupy an explicitly assistant, or subordinate, or deputy place. It is true that in some of the cases "official" status turned partly on the circumstance that the posts involved were to some extent directly contemplated by statute, but this is not true of by far the majority of the cases listed. The pattern is the broad and varied meaning which is given in New Jersey to *273 the idea of "governmental" function, even where certain types of subordinate employment were involved. 6 Rutgers L. Rev. 503 (1952); Fitzpatrick v. City of Passaic, 105 N.J.L. 103 (Sup. Ct. 1928), affirmed 105 N.J.L. 632 (E. & A. 1929) (firemen); Turtur v. Turley, 103 N.J.L. 526 (Sup. Ct. 1927) (municipal license inspector); Volk v. Burk, 83 N.J.L. 204 (Sup. Ct. 1912) (clerk to municipal board of commissioners of assessment); Horan v. Lane, 53 N.J.L. 275 (Sup. Ct. 1891) (municipal waterworks engineer); Schneider v. Atkinson, 86 N.J.L. 392 (Sup. Ct. 1914); Tice v. City of New Brunswick, 73 N.J.L. 615 (Sup. Ct. 1906) (city surveyor); Beattie v. Passaic County Board of Taxation, 96 N.J.L. 72 (Sup. Ct. 1921) (secretary of county board of taxation); Van Brookhoven v. Kennedy, 125 N.J.L. 178 (Sup. Ct. 1940), affirmed 125 N.J.L. 507 (E. & A. 1941) (assistant municipal superintendent of weights and measures); Westcott v. Briant, 78 N.J.L. 226 (Sup. Ct. 1909) (undersheriff); DeCamp v. Harrison, 108 N.J.L. 51 (Sup. Ct. 1931) (county deputy register of deeds); Pellegrino v. Evans, 133 N.J.L. 159 (Sup. Ct. 1945) (municipal building inspector); State v. O'Brien, 136 N.J.L. 118 (Sup. Ct. 1947) (clerk and executive assistant of municipal board of tax commissioners); Ibid. (municipal deputy collector of taxes); Valdes v. Baumann, 131 N.J.L. 43 (Sup. Ct. 1943) (municipal board of health plumbing inspector); Dolphin v. Mayor and Council of Town of Kearny, 116 N.J.L. 58 (Sup. Ct. 1935) (municipal water purveyor); Duncan v. Board of Fire and Police Commissioners of City of Paterson, 131 N.J.L. 443 (Sup. Ct. 1944) (policemen); Haines v. Chosen Freeholders of Camden County, 47 N.J.L. 454 (Sup. Ct. 1885) (steward of county almshouse); Brodman v. Rade, 101 N.J.L. 207 (E. & A. 1925) (secretary of local board of health); Fredericks v. Board of Health of Town of West Hoboken, 82 N.J.L. 200 (Sup. Ct. 1912) (local board of health inspector). See also Serritella v. Water Commission, etc. of Garfield, 128 N.J.L. 259 (Sup. Ct. 1942); Barkus v. Sadloch, *274 20 N.J. 551 (Sup. Ct. 1956); Board of Chosen Freeholders of Hudson County v. Brenner, 25 N.J. Super. 557, 559, 563 (App. Div. 1953). According to these cases, an office presupposes employment which is governmental in character and the duties certain and permanent; in a position the duties, while certain and permanent, may or may not be governmental (and are not assigned to it by any public law of this State); and in employment the duties are neither certain, permanent nor governmental.
The plaintiff's duties were partly custodial and recordational. He also had the status of an assistant, a deputy and secretary, and part of his duties concerned the transmission of orders, directions and instructions from the Superintendent to the foremen and employees. He also acted in place of Superintendent in the absence of the latter. Thus, under the decisions set out above, part of the duties of the plaintiff seem to be public and governmental.

II.
Assuming arguendo that the duties performed by the plaintiff were those of an employee, that he held a position rather than an office, R.S. 40:21-4 would nevertheless be applicable. In the case of Miele v. McGuire, 31 N.J. 339 (1960), the court stated:
"* * * The plaintiff contends that he was the holder of a position * * * rather than an office; this contention is not disputed by the defendants and seems consistent with the prior holdings in our State which have drawn somewhat obscure and rather unfortunate lines between offices, positions and employments * * *." (at page 34)
The weakness of the distinctions has been discussed in 6 Rutgers L. Rev., supra. Nevertheless, the distinction has been utilized and discussed in the New Jersey decisions, supra; and in Kovalycsik v. City of Garfield, 58 N.J. Super. 229, 233 (App. Div. 1959), the court held that the terms "position" and "office" are often used interchangeably. See *275 also Jersey City v. Dept. of Civil Service, 57 N.J. Super. 13, 28 (App. Div. 1959).
The question to be decided here is: Was it the intention of the Legislature under the provisions of R.S. 40:21-4 to limit the right of removal by a board of freeholders to office holders only? This is the contention of the plaintiff. This court cannot agree with this contention. If such were the intention of the Legislature, the right to remove persons holding positions would have vested elsewhere. Such is not the case, however, and it must be remembered that the object of R.S. 40:21-4 is to protect the public  not to protect employees who do not otherwise have the protection of other tenure statutes. See Borough of Park Ridge v. Salimone, 21 N.J. 28 (1956). And the statute should be liberally construed. Sullivan v. McOsker, 84 N.J.L. 380, 385 (E. & A. 1913); Walsh v. Dept. of Civil Service, 32 N.J. Super. 39 (App. Div. 1954).
It does not seem plausible that the Legislature intended that the board of freeholders could appoint officers, agents and employees, but could remove only officers. This would lead to an absurd situation. The result would be that agents and employees whose term was not fixed by law and who had no tenure protection under the statutes could not be removed, but that those holding office under the same circumstances could be removed. If, under the provisions of R.S. 40:21-3, one holding employment could not be removed, such an employee  not otherwise protected by any tenure statute  would gain tenure to a post and could not be removed under any circumstances, since there is no statute providing for his removal even after the filing of charges and the conducting of a hearing. If the right of removal does not lie within the scope of R.S. 40:21-3, no other provision allows for such removal. This would be an intolerable result which the Legislature assuredly did not intend. A statute will not be construed so as to reach an absurd or anomalous result. Robson v. Rodriquez, 26 N.J. 517 (Sup. Ct. 1958); Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, *276 166 (1954), and a statute must if reasonably possible be accorded a construction which is sensible and consonant to reason and good discretion rather than one which, though literal, leads to absurd consequences. Petition of Gardiner, 67 N.J. Super. 435 (App. Div. 1961) When the legislative intention can be ascertained with reasonable certainty, words may be altered or supplied in order to effectuate that intention and to avoid any repugnancy or inconsistency therewith. Orvil v. Woodcliff, 64 N.J.L. 286, 289 (E. & A. 1899).
In Newark v. Dept. of Civil Service, 68 N.J. Super. 416, 429-430 (App. Div. 1961), the court said:
"When a word or expression has both a recognized common meaning and a technical meaning, in absence of a contrary legislative intent, the term is presumed to be used in its common sense. 2 Sutherland, supra, sec. 4919, p. 441. The word `office,' as indicated in Webster's New International Dictionary (2d ed. 1961), is of old French origin. The Latin word officium is probably derived from opus meaning `work,' plus facere meaning `to do.' The first definition of the word `office,' according to Webster, is: `That which a person does for, or with reference to, another or others; a service.' In a law review article captioned `A New Jersey Municipal Law Mystery  What is a Public Office?,' our judicial decisions on this subject are analyzed and discussed at length. 6 Rutgers L. Rev. 503 (1952). The author makes this comment:
`* * * in many of the situations in which the differentiation between "offices," "positions" and "employments" is treated as supposedly having social-legal usefulness, it actually has only an empty formalistic function which obscures real legal utility and real legal value.'"
This view seems to have been recognized by the Legislature in 1951 when it extended old age and survivors insurance coverage to certain persons holding office, position and employment in the service of any county. This statute, N.J.S.A. 43:22-2(b), defines the term "employment" as any service performed by any person holding office, position or employment in the service of any county, and N.J.S.A. 43:22-2(c) states that the term "employee" includes any person holding office, position or employment in the service of any county.
*277 In construing statutory and constitutional provisions a court will presume that words thereof, save terms of art, were employed in their natural and ordinary meaning. Lloyd v. Vermeulen, 40 N.J. Super. 151 (Law Div. 1956), affirmed 40 N.J. Super. 301 (App. Div. 1956), affirmed 22 N.J. 200 (1956). It appears here that the word "office" is not a word of art with limited application, but applies to those in the named classes set out in R.S. 40:21-3. See Newark v. Dept. of Civil Service, supra.

III.
Plaintiff contends that under the terms of the resolution of appointment he was to serve "at the pleasure of the Superintendent of Public Works." This leads to the necessary inference that he could be removed only by the Superintendent of Public Works. This is not consistent with his previous argument. If the board of freeholders did not have authority to remove the plaintiff, how could the board of freeholders delegate authority  which it did not possess  to the Superintendent of Public Works, to remove the plaintiff?
Furthermore, in Barkus v. Sadloch, 20 N.J. 551, 555, 556 (1956), the court held that only the governing body had the authority to engage plaintiff and the prerogative could not be delegated to the board of assessors. It has been held that "the legislature cannot commit to the discretion of others the important function of creating public offices in unlimited or indefinite number  offices which the power creating them is incompetent to abolish." 3 McQuillan, Municipal Corporations (3d ed.), pp. 181, 182. Powers of county government, just as the powers of municipal government, are conferred by statute.
The general rule is that where the governing body of a county or municipality is given authority to exercise corporate powers, such powers are not susceptible of delegation. See Ohio County, Ky. v. Baird, 181 F. 49-54 (6 Cir. *278 1910). Were it otherwise, responsibility for the exercise of the power by the authority to which it was confided would be evaded, and in Hickman County v. Nashville Bridge Co., 66 F.2d 174, 176, 177 (6 Cir. 1953), the court held that the power to delegate the exercise of acts of discretion and judgment was not given in the statute. In the early case of Greene v. Board of Chosen Freeholders of Hudson County, 44 N.J.L. 388 (Sup. Ct. 1882), the court held that any office which was held at the will of the board could be deposed by the succeeding board, and at page 391 the court said:
"The power that created them can destroy them. He can be * * * deposed from office * * * at any moment."
And in Murphy v. Freeholders of Hudson County, 92 N.J.L. 244, 246 (E. & A. 1918), it was held that the power of removal is an incident to the power of appointment only to those cases where the office is held at the pleasure of the appointing authority.
In other words, legislative powers cannot be delegated, although mere ministerial powers may. A purely ministerial act is one to which nothing is left to discretion, while legislative acts involve the exercise of discretion and judgment. Lotspeich v. Morristown, 141 Tenn. 113, 207 S.W. 719, 722 (Tenn. Sup. Ct. 1918).
This court is of the opinion that the power attempted to be delegated to the Superintendent of Public Works was legislative rather than ministerial. It attempted to confer on him a wide discretion in determining the duration of the plaintiff's employment and in determining when said employment should terminate. And assuming that said delegation was proper, it was for an indeterminate period and could be revoked at any time. Furthermore, in Murphy v. Freeholders of Hudson County, 92 N.J.L. 244 (E. & A. 1918), the court held that the power to remove officers having a fixed term is not incidental to the power of appointment. A power of removal is incident to the power of appointment *279 only to those cases where the office is held at the pleasure of the appointing power. The present case comes within this latter classification.
The bylaws of the board of freeholders set out the duties of the Superintendent of Public Works, among which was the power to suspend all employees under his supervision subject to the approval of the Department of Purchasing and Public Property. The power to suspend did not reside in the Superintendent; the final approval of all suspensions resided in the above-named department. Furthermore, the power to suspend and the power to remove are not the same. To suspend means to discontinue temporarily. "Suspension" is an ad interim stoppage or arrest of official power and pay, while removal terminates wholly the incumbency of the office or position. Black's Law Dictionary (3d ed.) page 1528. Thus, the resolution gives the Superintendent of Public Works more power than he has under the bylaws.
The bylaws are not only silent on the Superintendent's power to hire and discharge, but are explicit in stating that the suspension and other duties which he may have to perform are subject to the approval and supervision of the Department of Purchasing and Public Property. The plaintiff's appointment was not void ab intio as the defendants contend. The board of freeholders had the power to make this appointment under the provisions of R.S. 40:21-3. The fact that the latter part of said resolution provides that the plaintiff should serve at the pleasure of the Superintendent of Public Works does not render the original appointment void; only the latter part of said resolution is void since, as pointed out above, the board had no authority to delegate to another a legislative act. However, assuming that the board had such power, the fact that the plaintiff was to serve at the pleasure of said Superintendent amounted to a delegation of authority for an indefinite period, and thus the delegation could be revoked at any time. It was revoked, in effect, by the resolution terminating the employment of the plaintiff.
*280 It follows, therefore, that the power to hire and remove the plaintiff rested solely with the board of freeholders, and in accordance with that power the said board acted validly and legally in its removal of plaintiff on January 2, 1961.

IV.
Under paragraph 11 of the bylaws of 1955 the county attorney had the duty to approve as to form any and all resolutions before their presentation to the board and indicate his approval therein, and the assistant county attorneys were to be under his supervision. Under paragraph 12 of the 1961 bylaws the county attorney-adjuster shall give such legal advice as the board may require and conduct such legal business of the county as the board may require, and also supervise the assistant county attorney-adjusters. Under paragraph 19 the special counsel to the board of chosen freeholders shall be responsible for the drawing of all resolutions of the board and to render any legal opinions as required by the board.
The plaintiff contends that since the court rendered void and set aside the appointment of Louis Dughi as special counsel to the board of freeholders, that this in effect voids the other resolutions passed by the board on that day and voids the entire set of bylaws adopted on January 2, 1961. The bylaws are severable. The effect of the court decision in Kaplowitz was to automatically eliminate paragraph 19 from the 1961 bylaws, thus eliminating the post of special counsel to the board of freeholders as well as the duties of such special counsel. Paragraph 12 of the 1961 bylaws was not affected. The position of county attorney-adjuster was not eliminated, and the county attorney-adjuster under paragraph 12 was to give such legal advice as the board may require and conduct such legal business of the county as the board may require. Thus the county is not without legal counsel.
*281 The plaintiff contends in his brief that:
"The illegal taint invalidating illegal powers renders tainted all subsequent resolutions arising thereunder * * *. Admittedly the argument is one of pure logic and common sense. If the tree which bore the fruit is poisoned, then ergo, the fruit is poisoned. The poison of invalidity which has infected the Resolution of the Board from the very roots and inception has spread and destroyed all their actions growing therefrom."
This argument presupposes something that is not a fact. The Superior Court decision in Kaplowitz did not set aside the bylaws of 1961, as was the case in Findlay v. Board of Supervisors of County of Mohave, 72 Ariz. 58, 230 P.2d 526 (Ariz. Sup. Ct. 1951); it only rendered void the resolution appointing a special counsel to the board of freeholders, the duties of which were set out in paragraph 19 of the 1961 bylaws. If the argument of the plaintiff should prevail, then whenever a court should declare unconstitutional a statute adopted on a certain day it would naturally follow that all statutes adopted on the same day would be unconstitutional.
Plaintiff contends that the failure of the county attorney to approve the resolutions submitted on January 2, 1961 is a fatal defect rendering the resolutions invalid. The county bylaws did require that the county attorney approve the form of resolutions prior to their submission and adoption. Initially, defendant contends that plaintiff has failed to prove that such approval was not obtained. There was nothing on the face of the resolutions to indicate that they were approved as to form. The evidence, and the logical inferences to be drawn therefrom, indicate that said resolutions may have been approved and were prepared by Louis J. Dughi. Mr. Dughi was the county attorney until December 28, 1960. If he aided in the preparation of said resolutions or merely approved them while he was in office, certainly the fact they were introduced after his term expired does not affect their validity. The purpose of the applicable bylaw is to assure reliable and competent legal advice on *282 formal resolutions. Even if Mr. Dughi did not prepare or approve the subject resolutions, the question remains whether the absence of such approval affects the validity of the freeholder action. The subject resolutions were simple and unambiguous in their intent. No evidence has been submitted that they would not have been approved had an opinion been sought. Therefore, no substantial consequences arise from the lack of approval. Defendant contends that approval is not a condition precedent to passage. 37 Am. Jur., sec. 55, p. 670, provides:
"* * * A municipal council has inherent power to make rules of procedure for its own government, provided such rules are not inconsistent with the constitution, its municipal charter, or any statute of the state. Such rules of procedure, printed in a manual, are presumed to have been validly adopted. The rules cannot have the effect of limiting the powers of the municipal council as established by statute, and an enactment which is actually adopted by a municipal assembly in accordance with its statutory powers is not invalid because its own rules of procedure were not complied with, whether they were in terms suspended or waived, or merely tacitly ignored. * * *"
Our New Jersey courts have held that there is a distinction between the essence of a law and a requirement relating to form only. Keyport Sewerage Authority v. Granata, 52 N.J. Super. 76, 86 (Law Div. 1958). The bylaw here in dispute clearly refers to approval as to form only. Furthermore, the board of freeholders has the right to ratify its action when not taken in strict accord with its own rules. Daniel Cory v. Freeholders of Somerset, 44 N.J.L. 445, 455 (Sup. Ct. 1882). Unless plaintiff can establish that the failure of the county attorney to approve the subject resolutions prejudiced plaintiff's rights or those of the public, in general, his contention of invalidity cannot prevail. The cases cited by plaintiff refer to the disregard of vital rules of procedure or specific statutes and each contains an express or implied finding of wrongdoing on the part of the public officials involved. No such evidence exists in the case at bar. The actions of the county board are *283 presumed to be valid, and lack of legal approval on routine matters of appointment and removal is immaterial to the issue of validity.
The bylaws of 1961 are prospective in their application. They do not have retroactive effect. Consequently paragraph 19 which provided that the special counsel to the board of freeholders shall prepare all resolutions took effect after the adoption of the bylaws, namely on January 2, 1961. There is no evidence that the resolution removing plaintiff and the resolution appointing the defendant Roesel were prepared after the adoption of the 1961 bylaws. In fact, the evidence seems to indicate that they were prepared before January 2, 1961 or at least before the meeting on said date. Therefore, the decision in Kaplowitz which in effect rendered void paragraph 19 would have no application.
Plaintiff further contends that the minority was not consulted when the resolutions dismissing plaintiff and appointing the defendant Roesel were prepared. This has been stipulated to. It has also been stipulated that the then minority was not consulted in the preparation of the resolution appointing the plaintiff on December 22, 1960. I do not agree with the plaintiff that the resolutions should be set aside because of this. However, assuming arguendo that the plaintiff is correct, in a proceeding such as this he may have judgment only on the strength of his own title and not upon any infirmity or weakness in the defendant's title. Morgan v. Mayor and Council of Borough of Roselle Park, 129 N.J.L. 233 (Sup. Ct. 1944).
A judgment of no cause for action is entered on behalf of the defendant.