189 N.J. Super. 127 (1983)
458 A.2d 1333
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT C. BOTTI, CITY OF UNION CITY, BOARD OF COMMISSIONERS OF THE CITY OF UNION CITY AND HUDSON COUNTY UTILITIES AUTHORITY, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided January 26, 1983.
*131 Eugene J. Sullivan for plaintiff State of New Jersey (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Mary C. O'Connell on the Brief).
S.M. Chris Franzblau for defendant Botti (Franzblau & Falkin, attorneys).
George J. Kaplan for defendants Union City and Union City Board of Commissioners.
John F. O'Donnell for defendant Hudson County Utilities Authority (O'Donnell, Vespole & Piechta, attorneys).
O'BRIEN, A.J.S.C.
The following is an amplification of the court's oral opinion in this matter filed pursuant to R. 2:5-1(b). That decision was rendered on the return day of an order to show cause why defendant should not be declared to have forfeited his offices within the provisions of N.J.S.A. 2C:51-2 a.
Botti is and has been a Commissioner of the City of Union City, an elected public office established by N.J.S.A. 40:72-1. Pursuant to N.J.S.A. 40:72-10 he has been chosen mayor. He is also a member of the Board of Commissioners of the Hudson County Utilities Authority, an appointed position authorized by N.J.S.A. 40:14B-4, and a member of the Weekawken-Union City Trunk Sewer Board, all as disclosed in an affidavit filed by defendant pursuant to the court's direction.
On December 22, 1982 defendant was found guilty in the United States District Court of one count of conspiracy, in violation of 18 U.S.C.A. § 371; 15 counts of mail fraud, in violation of 18 U.S.C.A. § 1341 and 1342, and two counts of *132 income tax evasion, in violation of 26 U.S.C.A. § 7201. He was sentenced on those convictions on January 24, 1983.
Notwithstanding the defenses contained in his answer, Botti concedes the applicability of N.J.S.A. 2C:51-2 a. From the outset he has conceded that all of the offenses involved dishonesty. Conversely, the Attorney General specifically does not contend in this action that the offenses involved or touched Botti's offices, position or employment, pursuant to subsection (2) of N.J.S.A. 2C:51-2 a. In fact, the Attorney General urged the court not to rule on the applicability of that section since it is not necessary to a decision, in view of Botti's concession that the offenses do come within subsection (1). Moreover, the State desires to reserve its right to urge that some of the offenses did involve or touch his office, position or employment, should the disqualification provided by N.J.S.A. 2C:51-2 c be urged as applicable to Botti at some time in the future. The court accepts that position by the State and specifically does not rule on the applicability of N.J.S.A. 2C:51-2 a(2) because it is not necessary to its decision.
The only matter before the court is a motion by defendant for a stay of the forfeiture pursuant to N.J.S.A. 2C:51-2 b(2). Subsection (b) of the statute deals with the time when forfeiture shall take effect. It provides:
b. The forfeiture set forth in subsection a. shall take effect:
(1) Upon finding of guilt by the trier of fact or a plea of guilty, if the court so orders; or
(2) Upon sentencing unless the court for good cause shown, orders a stay of such forfeiture. If the conviction be reversed, he shall be restored, if feasible, to his office, position or employment with all the rights, emoluments and salary thereof from the date of forfeiture.
Thus, the forfeiture may take effect when the jury returns its guilty verdict "if the court so orders." The United States District Court judge before whom Botti was convicted did not order the forfeiture to take effect upon the finding of guilt by the jury. In this case, then, the provisions of subsection (2) apply. In this section the Legislature has mandated forfeiture "upon sentencing." This is self-executing unless "the court for *133 good cause shown, orders a stay of such forfeiture". The federal judge, upon sentencing defendant did not order a stay of forfeiture. Rather, he deferred to the state courts. Accordingly, defendant made his motion before this court for such a stay.
The burden is upon defendant to show good cause why the automatic forfeiture should be stayed. The reasons urged by defendant as "good cause" are as follows:
(1) he has been elected as commissioner by the citizens of Union City and as mayor by his fellow commissioners, and the will of the electorate should not be thwarted; and
(2) the offenses of which he was convicted did not involve his offices, as contrasted to the former commissioner and mayor of Union City whom he replaced (see State v. Musto, 187 N.J. Super. 264 (Law Div. 1982), aff'd 188 N.J. Super. 106 (App.Div. 1983)), but rather, they related to his private business transactions; and
(3) the amount of money alleged by the United States as having been obtained by defendant by his fraudulent conduct in using the mails was minimal; and
(4) in the event that his conviction should be reversed, it may not be "feasible" to restore him to his public offices. If he is restored, the municipality will pay two salaries. Defendant City of Union City joins in this argument.
The right to hold public office is a valuable one. Stothers v. Martini, 6 N.J. 560, 565 (1951), citing In re Ray, 26 N.J. Misc. 56, 56 A.2d 761 (Cir.Ct. 1947). This court fully recognizes the right of the electorate to be governed by officials of their choice, even "the right to select unworthy candidates," Imbrie v. Marsh, 5 N.J. Super. 239, 245 (App.Div. 1949), aff'd 3 N.J. 578 (1950). Of course, Botti had not been convicted of these offenses at the time he was elected and appointed to the offices that he occupies. Thus the voters may or may not have elected him, and the officials appointed him, had they known of these offenses.
*134 Beyond that, the elected representatives of the people comprising the State Legislature have, by the enactment of N.J.S.A. 2C:51-2 a, mandated that public offices be forfeited upon certain convictions. Thus, we have the will of the people as expressed by their elected representatives overriding the alleged will of the electorate in Union City to continue Botti in his offices. The court concludes that the first reason urged by the defendant does not constitute good cause.
The contention by Botti that the offenses related to his private business transactions, as opposed to his official positions, may have been sufficient to exclude forfeiture under N.J.S.A. 2C:51-2 a(2), as offenses "involving or touching such office, position or employment" which, as stated above, is not necessary for the court's decision and therefore not ruled upon. However, as good cause to stay the forfeiture, the contention cannot withstand scrutiny.
The allegations of the indictment upon which defendant was convicted indicate, both in the conspiracy and mail fraud counts, that a scheme was utilized to feign compliance with N.J.S.A. 18A:18A-37 and the purchasing procedures of the Hudson County Vocational Technical School by submission of false and fraudulent written price quotations. Therefore the offenses committed by Botti involved fraudulent conduct with respect to public bidding procedures, even though he was acting in a private capacity as a salesman. Fraud requires a defrauder and a victim. Here the defrauder, although he was a public official, may or may not have used his public office to accomplish his fraud. However the victim is without dispute a public agency. In fact, it is an agency funded by the county government, which itself is funded by the citizens of the county, including the citizens of the community in which defendant serves as mayor and commissioner. There may even be some question as to whether the offenses do "involve or touch" Botti's offices, positions or employment.
*135 The purpose of 18 U.S.C.A. § 1341 is to prevent the Postal Service from being used to carry out fraudulent schemes, regardless of what is the exact nature of the scheme and regardless of whether it happens to be forbidden by state law. United States v. States, 488 F.2d 761, 767 (8 Cir.1973). While it is not illegal to mail a letter, to do so pursuant to a scheme or artifice to defraud is a federal crime. Such fraud is also an offense in New Jersey, N.J.S.A. 2C:20-4. It is the use of the Postal Service which gives jurisdiction to the federal court to convict for that fraudulent conduct. As this court concluded in State v. Musto, supra 187 N.J. Super. at 277:
The element of the use of mails and wires is purely jurisdictional. The underlying offense is the attempt to scheme or defraud or take money or property under false pretenses.
In United States v. States, supra, the court discussed the nature of the fraud necessary to constitute mail fraud, quoting the following language from Blachley v. United States, 380 F.2d 665, 671 (5 Cir.1967):
The crime of mail fraud is broad in scope.... The fraudulent aspect of the scheme to "defraud" is measured by a nontechnical standard ... Law puts its imprimatur on the accepted moral standards and condemns conduct which fails to match the "reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of the members of society." This is indeed broad. For as Judge Holmes once observed, "[t]he law does not define fraud; it needs no definition. It is as old as falsehood and as versable as human ingenuity."
There was no express power given to the court to stay the forfeiture under the predecessor statute, N.J.S.A. 2A:135-9. As originally proposed, the Penal Code read, in pertinent part:
b. The forfeiture set forth in Subsection a shall take effect upon sentencing unless the sentencing court or an appellate court, for good cause shown, orders a stay of such forfeiture. [Final Report of the N.J.Crim.Law Revision Comm'n, vol. I at 174; § 2C:51-2b].
Consequently, this court, being neither the sentencing court nor an appellate court, would not have had jurisdiction. The language of the Penal Code as finally enacted, granting this court power to stay the forfeiture, has not previously been interpreted.
*136 Defendant points out that in every case where the court is searching for good cause to stay a forfeiture the applicant will of necessity be the holder of a public office, position or employment. If not, there would be nothing to forfeit. Therefore, says defendant, if the crime does not involve or touch the public office, position or employment, but yet calls for forfeiture as "involving dishonesty or a crime of the third degree or above," the forfeiture may be stayed. This is true. (The language of the statute does not so limit the court's power to stay the forfeiture, and presumably it could be exercised even if the offense did involve or touch the office, position or employment.) In any event, an applicant for stay may be convicted of some offense of the third degree, i.e., an aggravated assault under N.J.S.A. 2C:12-1 b(2), or promoting gambling under N.J.S.A. 2C:37-2 b, but a court may conclude that there is a substantial likelihood of success on appeal, and the offense is totally unrelated to the performance of his duties as such public official and stay the forfeiture.
However, that is not this case, involving as it does a mayor and commissioner convicted of offenses of dishonesty (and perhaps of a third degree crime) based upon fraud relating to the purchasing procedures of a governmental agency. The public has the right to have full confidence in the integrity of the officials they have elected to govern them. A city should not be governed by someone who has been convicted of a crime of this nature. Although the crimes involve defendant's actions as a salesman for a private company, as earlier observed, they involve fraudulent conduct with respect to public bidding procedures. In his public role as mayor and commissioner Botti is called upon to act in compliance with public bidding laws. How can the public have confidence that he will deal fairly and honestly when he has been convicted of dealing fraudulently with another public agency?
The fact that the amounts involved were not large, or that the agency did not in fact lose money, or that no one else *137 would sell to this agency, are all irrelevant in the face of this fraudulent conduct. Thus the second and third reasons urged by defendant do not demonstrate good cause sufficient to stay the forfeiture.
The fourth reason urged by the defendant as good cause is the only one with any substance. However, the argument that upon reversal of his conviction it may not be "feasible" to restore him to office has been fully considered and rejected by the Appellate Division in Hayes v. Hudson Cty. Freeholder Bd., 116 N.J. Super. 21 (App.Div. 1971). In that case the court concluded:
The Board of Freeholders would appoint a person to serve until January 1, 1972 (the next annual stated meeting of the Board), and the people would elect a successor to serve from January 1, 1972 until the expiration of Wojtycha's term. If prior thereto the convictions were reversed, the incumbency of either successor would automatically terminate and Wojtycha's title to the office would revest. If the latter postulate be argued to cut down the term of the successor as fixed by N.J.S.A. 40:20-4, the answer is simply that the process of reading the two enactments together and searching for a congruent result yields the stated conclusion. Assured thereby are both public policy objectives  keeping a public office filled and doing justice to an unjustly convicted official. [at 27]
Similarly in this case, pursuant to the Municipal Vacancy Law, N.J.S.A. 40A:16-1 et seq., the vacancy will be filled for its unexpired term at the next general election (which occurs before the next regular municipal election) and in the meantime the governing body may fill the vacancy temporarily by appointment. N.J.S.A. 40A:16-4 b, 40A:16-12. If prior to the expiration of Botti's term the conviction is reversed, the incumbency of either successor would automatically terminate and Botti's title to the office would revest. The same circumstances would apply with respect to the appointive offices held by Botti, to the extent that they have terms.
It is true, as Botti contends, that upon restoration to his offices or positions he would probably be entitled to his salary from the date of forfeiture. Since presumably his replacements in those offices or positions will have been paid salaries, the public might have to pay twice for the performance of the same *138 duties. This problem was alluded to by Judge Conford in Hayes v. Hudson Cty. Freeholder Bd., supra at 28, n. 2. The likelihood of this happening has been increased by the language of N.J.S.A. 2C:51-2 b(2).
In that case the court was interpreting the predecessor statute, N.J.S.A. 2A:135-9, which reads, in pertinent part, as follows:
If the conviction of such officer be reversed, he shall be restored to his office or position with all the rights and emoluments thereof from the date of the forfeiture.
Notwithstanding that the word "emolument" is defined in Webster's New International Dictionary (2 ed.) as "profit from office, employment, or labor; compensation; fees or salary," the Supreme Court in DeMarco v. Bergen Cty. Freeholder Bd., 21 N.J. 136, concluded:
It also provides that if the conviction be reversed the officer shall be restored to his office or position "with all the rights and emoluments thereof from the date of the forfeiture." Presumably the rights and emoluments referred to are those such as seniority and pension rights which would otherwise have accrued but were terminated upon the forfeiture of the office; the statute does not manifest any purpose to alter the independent common law principle that a public officer's right to receive salary is dependent on the performance of the duties of his office; and in any event is not to be applied in favor of a public officer whose office was never forfeited and who seeks compensation for a period during which he rendered no services because he was properly under suspension. [at 146]
As observed, DeMarco had not forfeited his office after conviction, but rather had been suspended. Perhaps the court did not intend its language to apply to the salary of a restored public official after reversal of conviction and forfeiture. Judge Conford in his footnote in the Hayes case (at 28, n. 2) suggested, however, "but the intimation in DeMarco v. Bd. of Chosen Freeholders of Bergen Cty., 21 N.J. 136, 146 (1956), is that interim pay would not have to be accorded the convicted official."
Those opinions may have prompted the Legislature, in the enactment of N.J.S.A. 2C:51-2 b(2), to specifically incorporate the word "salary" in addition to the word "emoluments." Therefore the result urged by defendant, that he may be entitled *139 to salary if his conviction be reversed on appeal and he be restored to office, notwithstanding that salary had been paid to his replacements, seems to be correct. This circumstance, of course, suggests cause.
The amount of salary received by Botti in his role as commissioner and mayor is reported to be approximately $8,000 a year, fixed by ordinance adopted pursuant to N.J.S.A. 40A:9-165. The salaries, if any, for his other positions have not been shown. Thus, the court is required to determine whether the cause shown is sufficiently "good" to warrant a stay of the forfeitures. On the one side of the scale there is the probability that if Botti's conviction is reversed on appeal and he is restored to office, the taxpayers will be obliged to pay him his salaries from the date of the forfeitures, even though salaries had been paid to his replacements. On the other side of the scale is the spectre of a public official convicted of crimes involving dishonesty and fraud, directly related to public bidding procedures of another agency, remaining in office.
The following language was quoted by the court in Hayes v. Hudson Cty. Freeholder Bd., supra 116 N.J. Super. at 26:
Respect for the law and confidence in public officers cannot be compelled. These attributes stand as a voluntary tribute to just laws and integrity in public office. While they exist, both the law and the official will retain public trust. Confidence in an elective official is destroyed when he is convicted of an infamous crime. * * * While neither the constitution nor the statutes effecting its purpose define the term "conviction", yet respect for the law and deference to the transcendent trust placed in public officials requires that such officer forfeit his office after the presumption of his innocence is disspelled by conviction of an infamous crime in a trial court. (People ex rel. v. Keenan and McGuane, 13 Ill.2d 520, 150 N.E.2d 168, 177-178 (Sup.Ct. 1958).)
Defendant here was convicted of an infamous crime, i.e., shameful and disgraceful. The fact that he continued in office pending trial is irrelevant since then he was presumed innocent. Upon his conviction that presumption no longer prevails and the law thereafter presumes that the proceedings have been regular and that defendant is guilty. Here, all the motions before the United States District Court have been denied and he has been sentenced. Thus he appears before this court now as guilty.
*140 Chief Justice Vanderbilt described the role of public officers holding positions of public trust in Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952):
They stand in a fiduciary relationship to the people whom they have been elected or appointed to serve. (Citations omitted.) As fiduciaries and trustees of the public weal they are under an inescapable obligation to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity. [at 474-475] (citations omitted.)
And, at 476, said:
These obligations are not mere theoretical concepts or idealistic abstractions of no practical force and effect; they are obligations imposed by the common law on public officers and assumed by them as a matter of law upon their entering public office. The enforcement of these obligations is essential to the soundness and efficiency of our government, which exists for the benefit of the people who are its sovereign.
Recently that language was referred to by Judge Baime in State v. Gregorio, 186 N.J. Super. 138 (Law Div. 1982), who further stated:
Perhaps it bears repeating that our government is founded upon trust. We entrust those who govern with broad powers to formulate and implement public policy and "we have faith that they will properly perform their obligation." Hyland, "Combatting Official Corruption in New Jersey", 3 Crim.J.Q. 164 (1975).... These principles are not mere platitudes. They represent the first rule of good government. [at 143]
These observations have equal application here. A city should not be governed by someone who has been convicted of crimes of this nature merely because of the possibility that those convictions may be reversed and the public will have to bear the cost of two salaries. It is not too great a price to pay that the public may have the utmost confidence in the honesty and integrity of the officials that have been chosen to govern them and conduct the public's business.
For all of the foregoing reasons the court has concluded that defendant has failed to show good cause why the forfeiture of his offices should be stayed. Accordingly, a judgment will be entered in favor of plaintiff declaring that defendant Robert C. Botti forfeited his office as a commissioner of the City of Union *141 City and as its mayor; as a commissioner of the Board of Commissioners of the Hudson County Utilities Authority and as a member of the Weehawken-Union City Trunk Sewer Board, as of January 24, 1983, pursuant to N.J.S.A. 2C:51-2 a. The motion for a stay of that forfeiture is denied. An order has been signed.