Accordingly, the judgment under review is affirmed.

JAMES E. MOORE, JR., PETITIONER–APPELLANT, v. YOUTH CORRECTIONAL INSTITUTE AT ANNANDALE, AND THE NEW JERSEY DEPARTMENT OF CORRECTIONS, RESPONDENTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 28, 1988—Decided January 30, 1989.

Before Judges BRODY, ASHBEY and SKILLMAN.

*Robert A. Fagella* argued the cause for appellant (*Zazzali, Zazzali & Kroll,* attorneys, *Robert A. Fagella* of counsel and on the brief).

*Jeffrey A. Bartolino,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney, *Michael R. Clancy,* Deputy Attorney General, of counsel, *Jeffrey A. Bartolino,* on the brief).

The opinion of the court was delivered by

ASHBEY, J.A.D.

Appellant James Moore was a senior corrections officer at the Youth Correctional Institution at Annandale.[1] The Merit System Board (Board) of the Department of Personnel determined that, pursuant *N.J.S.A.* 2C:51-2, he had forfeited his entitlement to that employment.[2] Moore appeals and we affirm.

---

[1]Effective November 30, 1988, to be designated Mountain View Youth Correctional Facility. *N.J.S.A.* 30:1B-8.

[2]At oral argument we were advised that where the appointing authority deems it applicable, the forfeiture statute has been invoked within administrative proceedings if the administrative action is subject to Merit System Board review. *N.J.A.C.* 4A:2-2.7(c) specifically now so provides. We recognize that our dissenting colleague questions whether the law authorizes such a procedure. As he notes, this argument was not raised by Moore, nor addressed by the State.

The record reveals that on December 24, 1985, Moore was initially suspended and removed from his position as a senior corrections officer by the Department of Corrections (Department), effective February 18, 1986. Moore contested this suspension and removal with the Department of Personnel, resulting in a contested hearing before an administrative law judge (ALJ). On October 14, 1986, the ALJ recommended to the Board that Moore be disciplined, but that the Department's removal be vacated and that he be suspended without pay for 30 days. On November 25, 1986, the Board, at its public meeting, accepted the recommendation of the ALJ and reversed the Department's order of removal, ordering that Moore be suspended for 30 days beginning on December 24, 1985 and that he receive back pay for the period following his suspension to the date of his actual reinstatement. That order was reduced to writing on December 5, 1986.

On January 14, 1987, Moore was convicted of the harassment of his Department supervisor, in violation of *N.J.S.A.* 2C:33–4, in White Township Municipal Court. On February 4, 1987, the Department reinstated Moore to the payroll at the institution and simultaneously again suspended him from his position. This accorded with a preliminary notice of disciplinary action which referred to the harassment conviction and to *N.J.A.C.* 4:1–16.9(a)(11) [3] (conduct unbecoming an employee in public service). On February 17, 1987, Moore was given a departmental hearing which again resulted in his being removed from his position. The Department's final notice of disciplinary action stated:

The following charge(s) was sustained:

N.J.S. 2C:33–4A

N.J.S. 2C:33–4C

N.J.A.C. 4:1–16.9(a)11. Conduct unbecoming an employee in public service.

---

[3] Now codified and renumbered at *N.J.A.C.* 4A:2–2.3(a)6, effective October 5, 1987. Because the ALJ concluded that Moore's position was subject to forfeiture, he did not examine the applicability of those grounds for removal.

The following disciplinary action has been taken against you:

\*      \*      \*      \*      \*      \*      \*      \*

Removal.4

Moore again appealed to the Board. The matter was again referred as a contested matter to an ALJ, who initially decided that petitioner's "employment terminated as of January 14, 1987 [the date of his conviction]." On January 12, 1988, the Board accepted the ALJ's initial decision that the forfeiture statute applied, and that by his conviction, Moore forfeited his employment.

On appeal, Moore challenges the application of the forfeiture statute on two grounds. He first claims that he could not forfeit employment at a time when he was not employed by the Department. In the alternative, he asserts that his municipal court conviction did not "involve" or "touch" that employment. *N.J.S.A.* 2C:51–2 provides as follows:

a. A person holding any public office, position, or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof, who is convicted of an offense shall forfeit such office or position if:

(1) He is convicted ... of an offense involving dishonesty or of a crime of the third degree ...;

(2) He is convicted of an offense involving or touching such office, position or employment;

We first address the question of whether Moore was employed on November 26, 1986, when the complaint which formed the basis of the conviction was filed. That date was one day after the Board had ruled at its public meeting that Moore was entitled to reinstatement and to back pay. Moore contends that he was not employed by the Department on that date for several reasons: (1) because he was employed elsewhere, (2) because the Department did not regard him as an employee, and (3) because his reinstatement was not effective until De-

4Moore does not contend that the notices did not inform him that *N.J.S.A.* 2C:51–2 applied. At oral argument before us we were advised that forfeiture was discussed at the departmental hearing.

cember 5, 1986, the date when the Board mailed the decision to him, relying on *N.J.S.A.* 52:14B–10(e) and *Belleville v. Coppola,* 187 *N.J.Super.* 147 (App.Div.1982).

We reject this position. Our review of the record persuades us that Moore was an employee on the date in question. The Department's attempt to remove him had been declared ineffective the day before. Although there were ancillary disputes about the extent of his right to back pay, none of them challenged his entitlement to pay as an employee of the Department on November 26, 1986. While *N.J.S.A.* 52:14B–10(e) refers to the date of mailing as the effective Board decision date, under *N.J.S.A.* 52:14B–10(d), the Board's public oral decision was its final decision. In *Belleville v. Coppola, supra,* 187 *N.J.Super.* at 152 we stated that the Board's oral timely decision was effective, despite an untimely delivery of the Board's written decision. Appellant does not contend that the law would permit the administrative oral final ruling to be modified in any substantive way by the subsequent written memorandum.[5] Our review of the apparent conflict between *N.J.S.A.* 52:14B–10(d) and *N.J.S.A.* 52:14B–10(e) persuades us that the latter section was designed to preserve the right to move for reconsideration and to appeal following receipt of notice. *See N.J.A.C.* 4A:2–1.6. While Moore's appeal to the Board was pending, the Department's removal was "major discipline", *N.J.A.C.* 4A:2–2.2, of an "employee", *N.J.A.C.* 4A:2–2.1. Nothing in the Administrative Procedure Act or its rules or in either Civil Service Act, the one in effect when Moore was initially disciplined or the one in effect when the Board issued its decision, describes someone in Moore's position as anything but an "employee", so long as service with the Department has not

---

[5] *Cf. Selengut v. Ferrara,* 203 *N.J.Super.* 249, 263 (App.Div.1985), certif. den. 102 *N.J.* 316 (1985); *Mahonchak v. Mahonchak,* 189 *N.J.Super.* 253, 256 (App. Div.1983); *Parker v. Parker,* 128 *N.J.Super.* 230, 232–233 (App.Div.1974); *State v. Pohlabel,* 40 *N.J.Super.* 416, 423 (App.Div.1956).

been effectively terminated by a Board final ruling to that effect. *See N.J.S.A.* 11:15–4,–5; *Matter of Morrison,* 216 *N.J. Super.* 143, 151 (App.Div.1987); *N.J.S.A.* 11A:2–6a.

We now come to what we regard as the more difficult issue, whether Moore's conviction for a petty disorderly offense against his departmental supervisor "involv[ed] or touch[ed]" his employment. The victim of the "harassment", Michael Morris, was a corrections captain and had been Moore's longtime immediate supervisor at the time of his 1985 suspension. The municipal court merged two complaints. Morris' first complaint was that Moore made a harassing telephone call to Morris, *N.J.S.A.* 2C:33–4a, "using offensively coarse language and threatening to do harm". His second was that Moore harassed him by coming to his home, racing his car engine, speeding away from the house and returning, as a "course of alarming conduct or of repeatedly committed acts" whose purpose was "to alarm or seriously annoy" Morris. *N.J.S.A.* 2C:33–4c. Moore conceded before the ALJ that he could not challenge the fact of the conviction which followed a trial. He urged the ALJ to find that the conviction was unrelated to Moore's employment, although "part of an employment situation."

The genesis of the conviction was a claimed animosity held by Moore against Morris stemming from the 1985 disciplinary proceedings which had been the subject of the Board's reinstatement of Moore the day before Morris made his complaint. Morris had investigated the 1985 allegation that Moore was waving his arms visibly in the institution's public areas covered in a white sheet, leading inmates to believe that he was disguised as a Ku Klux Klan figure. In the administrative law hearing on this charge, Moore denied doing anything but carrying white sheets, but the ALJ concluded that Moore was guilty as charged of various disciplinary infractions: neglect of duty, creating a disturbance on State property, mental abuse of inmates, intentional misstatement of a material fact and inten-

tional abuse or misuse of authority or position. (These findings were never modified on appeal.)

Morris had taken a leading prosecutorial part in these proceedings. While there was no testimony concerning any confrontation between Moore and Morris from the time of the 1985 suspension and November 26, 1986, it was a fair inference from the record that Morris had complained to departmental superiors when Moore appeared on the grounds of the institution during that time, even though his presence was in connection with other employment. Whether Moore knew about that complaint was not clear. Moore testified that he kept in touch with institutional developments through his brother and by frequenting a bar also frequented by correction officers from the institution.

Our record of the harassment conviction consists of the words of the complaint, the fact of the conviction, and the testimony of Moore and Morris before the ALJ. Morris testified that on the day after the Merit System Board reinstated Moore, Moore called Morris on the telephone. According to Morris, Moore said, "oh, you like to fuck with people's lives, I'm gonna fuck with your life." Approximately 10 minutes later, Moore drove in front of Morris's home, and parked on the front lawn. Moore waited a few minutes, pulled into the driveway, raced his motor, spun his tires and sped away. Moore returned "a few moments later" parked across the street and "just sat in his truck." Morris then left his house, went to his front porch and spoke to Moore. He told Moore to stop doing what he was doing because he (Morris) had reported Moore to the authorities and he could get into trouble. Moore responded by saying "he [Moore] would do what he'd have to do." Morris testified that when Morris went to work, he found Moore's truck parked at the entrance to the institution, with Moore "observing" him.

Before the ALJ Moore testified that he made no telephone call, no threats, and never saw Morris on the day in question. He said that rain had cancelled his regular employment as a

laborer, that he had passed Morris's house more than once, but that he had done so with a friend with whom he was shopping for a Christmas tree at the farm adjoining Morris' premises. He further said that he had not testified at the municipal court, but that his friend had testified in accord with his history of the incident. No municipal transcript was proffered. The ALJ ruled that the convictions represented a factual finding concerning the events described in the complaint, including the elements of the offense of harassment, and that the additional testimony was properly relevant concerning whether the harassment "touched" Moore's employment.

■ Moore first contends that the ALJ erred when he admitted Morris' testimony because there was nothing in the record to support a finding that the municipal court judge had found it credible. This position is without merit. While the conviction was not admissible to prove any fact essential to sustain the judgment under *Evid.R.* 63(20) because the offense was not indictable, in similar circumstances a harassment conviction has been held to estop a public employee from retrying in the administrative disciplinary hearing the facts which sustained the conviction. *Matter of Tanelli*, 194 *N.J.Super.* 492, 498 (App.Div.1984), certif. den. 99 *N.J.* 181 (1984). Before the ALJ Moore conceded that the purpose of the hearing was to determine whether the conviction had "injurious effects on his employment," and Moore was given every opportunity to try that issue. We reject his assertion that, because the municipal complaints were merged into one conviction for making the harassing telephone call, the State was somehow estopped from introducing evidence relating to the other incident to demonstrate that the conviction for making the telephone call involved or touched his employment, or because the municipal court's findings respecting credibility were not explicit.

Moore also contends that the harassment offense did not involve or touch his employment because it did not take place during employment hours or on employment grounds. Our

review of the case law persuades us that what constitutes a conviction "involving or touching" public employment as defined in *N.J.S.A.* 2C:51–2a(2) has not been greatly explored by the courts.[6] We do not, however, derive any articulated requirement that the nexus be limited by time and location. In *Bevacqua v. Renna*, 213 *N.J.Super.* 554, 560 (App.Div.1986), an electrical inspector licensed by the Commissioner of Community Affairs was convicted of a disorderly persons theft involving failure to remit inspection fees to a municipality. While there was question concerning whether Bevacqua was a "public official", there was no question concerning the relationship of his conviction to his employment. In *State v. Musto*, 188 *N.J.Super.* 106 (App.Div.1983), aff'g 187 *N.J.Super.* 264 (Law Div. 1982), we approved Judge O'Brien's conclusion that a federal conviction for mail fraud and racketeering triggered the application of the State forfeiture statute. Judge O'Brien's opinion explored at length the legislative history preceding *N.J.S.A.* 2C:51–2, but concluded that *N.J.S.A.* 2C:51–2a(1), rather than 2C:51–2a(2), applied. 187 *N.J.Super.* at 274. In *State v. Botti*, 189 *N.J.Super.* 127, 132 (Law Div.1983), Judge O'Brien, in denying petitioner's motion for a stay of the forfeiture pursuant to *N.J.S.A.* 2C:51–2a, refused to decide if any of the convictions for mail fraud, conspiracy, or income tax evasion "touch[ed]" the mayor's employment because these offenses involved dishonesty and, therefore, warranted forfeiture under *N.J.S.A.* 2C:51–2a(1). In *N.J. Turnpike Employees v. N.J. Turnpike Auth.*, 200 *N.J.Super.* 48 (App.Div.1985), certif. den. 101 *N.J.* 294 (1985), we held that a toll collector's conviction for

---

[6]*N.J.S.A.* 2C:51–2c provides that, in addition to forfeiture of employment under 2C:51–2a, a convicted public employee "shall be forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions" if "convicted of an offense involving or touching on his ... employment ..." Thus, the issue of extended forfeiture also concerns the meaning of "involving or touching" employment. However, an employee subject to the provisions of *N.J.S.A.* 2C:51–2c must have forfeited the original position, which, in most cases, has been because of the application of *N.J.S.A.* 2C:51–2a(1).

being in possession of toll money he had reported missing made him subject to the forfeiture statute as a public employee, noting that "the law expressed in *N.J.S.A.* 2C:51–2 was intended to speak to the privileges and obligations of employees of government." *Id.* at 54–55. Both *N.J.S.A.* 2C:51–2a(1) and (2) were applicable, however, provided the toll collector was considered a covered public employee. In *Matter of Tanelli, supra,* 194 *N.J.Super.* at 495, the issue was the forfeiture of a high school teacher's position for a harassment conviction respecting telephone calls to his principal. The State Board of Education, however, concluded that the forfeiture statute was not yet effective when the acts took place, so the matter proceeded administratively as a charge of "unbecoming conduct" as provided in the Education Law, *N.J.S.A.* 18A:6–10 *et seq.*

Respecting a similar issue, however, in *State v. Bielecki,* 196 *N.J.Super.* 332, 337 (App.Div.1984), certif. den. 99 *N.J.* 216 (1984), a police chief's admission of lying to a State grand jury about furniture in his possession subjected him to discretionary forfeiture of his office under *N.J.S.A.* 2A:81–17.2a3 as an admission "relating to his employment or touching the administration of his office or position" because of the underlying facts. The State Grand Jury was investigating allegations of misappropriation of property (which was being held for charitable use) by policemen, including himself, while he was the chief of police. There was no evidence that any misappropriation or the chief's lying about it occurred during his employment hours. While there is a difference between the two statutes, one of which uses the word, "relating to", and the other uses the word, "involving", both *N.J.S.A.* 2A:81–17.2a3 and *N.J.S.A.* 2C:51–2a(2) use the word "touching" the employment.

None of the cases cited makes a distinction between actions

"involving or [actions] touching" employment,[7] although the word "touch" was relied upon by the ALJ, who said,

> It would appear that the type of conduct that occurred here and resulted in appellant's conviction for harassment of his immediate superior is precisely what the Legislature had in mind when it required that the offensive conduct merely touch the office, position or employment rather than a more rigid or demanding requirement that the conduct be directly and proximately related to the performance of a regular or assigned duty.

The State takes the position that *N.J.S.A.* 2C:51–2a(2) requires employment forfeiture for every public employee who gets into a dispute over working conditions with his or her supervisor, if that dispute should lead to a petty disorderly offense conviction. Moore, on the other hand, urges the applicability of cases respecting non-forfeiture of pension benefits under similar circumstances. We disagree with both positions. Pension cases concern appropriate compensation for past duty, not fitness for present and future duty, and they have been distinguished on those grounds. *See Uricoli v. Police & Fire Retirem. Sys.*, 91 *N.J.* 62, 73–76 (1982); *Masse v. Public Employees Retirem. Sys.*, 87 *N.J.* 252, 264 (1981). In *State v. Botti, supra*, 189 *N.J.Super.* at 136, Judge O'Brien said, respecting the mayor in his private life, "[a]lthough the crimes involve defendant's actions as a salesman for a private company, as earlier observed, they involve fraudulent conduct with respect to public bidding procedures. In his public role as mayor and commissioner Botti is called upon to act in compliance with public bidding laws." In other words, whether a conviction involves or touches employment under the forfeiture statute does not depend upon whether the criminally proscribed acts took place within the immediate confines of the employment's daily routine. The crux of the matter is whether the conviction and the facts upon which it is based have a direct and

---

[7] *Webster's New Universal Unabridged Dictionary* (Simon and Schuster, 1979) gives for the verb "involve" a definition, "to bring into connection." One definition of the verb "touch" is to "be or come into contact with." We find little distinction in these meanings.

incompatible relationship with the duties required by the employment. Our review of the nature of Moore's employment persuades us that such a relationship existed.

As a preliminary, we note that from his application for employment as a corrections officer onward, Moore was subjected to a higher standard respecting contact with the criminal justice system than other non-law-enforcement applicants for public employment. For instance, as a corrections officer, unlike other candidates for public employment, Moore could be questioned about his arrest record and he could be removed from a list of eligible appointees even though he had been pardoned or had his criminal conviction expunged. *N.J.S.A.* 11A:4–10,–11. More important, Moore's employment conduct was specifically regulated as authorized by *N.J.S.A.* 30:1B–24 and *N.J.A.C.* 10A:3–1.1 *et seq.* respecting physical confrontation with others: for example, respecting the use of force upon inmates (*N.J.A.C.* 10A:3–3.1); the use of force against others (*N.J.A.C.* 10A:3–3.4); the use of deadly force (*N.J.A.C.* 10A:3–3.3); the use of mechanical restraints (*N.J.A.C.* 10A:3–3.6). These limitations were not confined to Moore's conduct on the grounds of the institution. Every incident requiring the use of force was required to be reported to Moore's "shift supervisor", who also was required to approve the use of restraints (*N.J.A.C.* 10A:3–3.5,–3.6). The "shift supervisor" was responsible for security in any tour of duty (*N.J.A.C.* 10A:3–1.3). These regulations and others spelled out the hierarchical command inherent in Moore's employment and its relationship to the use of only such force as necessary in his correctional work. Moore does not deny that he had a duty to enforce the law and to uphold the regulations of the institution in order to present an image of dependability to the inmates he guarded. *See Moorestown Township v. Armstrong*, 89 *N.J.Super.* 560, 566 (App. Div.1965), certif. den. 47 *N.J.* 80 (1966). We derive from the regulations governing his employment an additional conclusion that his duty was particularized concerning both his position in

the chain of command and the use of physical force.[8] There are "special problems of [employee] discipline in a prison." *Belleville v. Coppla, supra,* 187 *N.J.Super.* at 154 distinguishing *Henry v. Rahway Prison,* 81 *N.J.* 571 (1980).[9]

The provisions of *N.J.S.A.* 2C:51–2 were new with the criminal code, and harsher than those contained in the prior law. *N.J.S.A.* 2A:135–9 limited forfeiture of public employment to circumstances involving convictions for misdemeanors touching the position, or which involved moral turpitude. *N.J.S.A.* 2C:51–2 was enacted as a part of a chapter which represented "an effort to rationalize the collateral consequences of a criminal conviction." *The New Jersey Penal Code Volume II: Commentary,* Final Report of the New Jersey Criminal Law Revision Commission (1971). The Model Penal Code source was Sec. 306.1 *et seq.,* although the New Jersey statute differed significantly. *N.J.S.A.* 2C:51–1 states that unless otherwise provided, no person may suffer legal disability because of his conviction of an offense unless "the disqualification or disability involves the deprivation of a right or privilege ... when the commission of the offense or the conviction or the sentence is reasonably related to the competency of the individual to exercise the right or privilege of which he is deprived." *N.J.S.A.* 2C:51–1a(4). The 1971 commentary noted that, "[c]onviction in some instances may be relevant to the public safety interests underlying the regulation but in many others it is not." We derive from examining this related statute and its history a

---

[8] An element of "force" is necessarily implicated in Moore's harassment conviction. *N.J.S.A.* 2C:33–4 (harassment) is a lesser included offense of *N.J.S.A.* 2C:12–1a (simple assault), "the difference being in the level of fear induced." CANNEL, TITLE 2C, *Comment N.J.S.* 2C:33–4, citing *State v. Berka,* 211 *N.J.Super.* 717 (Law Div.1986).

[9] The extent to which law enforcement employment "implicates a serious state interest" rendering otherwise protected employee conduct cause for discharge is discussed in *Rankin v. McPherson,* 483 *U.S.* 378, ——, 107 *S.Ct.* 2891, 2898, 97 *L.Ed.*2d 315, 327 n. 13 (1987), reh'g den. —— *U.S.* ——, 108 *S.Ct.* 31, 97 *L.Ed.*2d 819 (1987).

legislative intent to require a rational connection between a disqualifying conviction for an offense and the public employee's competence, emphasizing underlying public safety where the employment so requires. We recognize that *N.J.S.A.* 2C:51–1a(2), rather than *N.J.S.A.* 2C:51–1a(4), specifically covers Moore's conviction because forfeiture is a disability created by another section of the Code, but in our view the commentary sheds light on the intent of the entire chapter, including other sections of the Code.

By *L.* 1987, *c.* 427, the Legislature amended *N.J.S.A.* 2C:51–2 to provide that the court may waive any of the forfeiture provisions respecting disorderly and petty disorderly offense convictions, clearly recognizing and approving the harsh terms of the unamended statute, but conferring judicial discretion to ameliorate the harshness of the civil penalties involved. Part of the legislative history of that amendment includes the Governor's veto statement when he returned a previous bill to the Legislature for reconsideration. That statement, a reliable aid to legislative interpretation (*see Fields v. Hoffman,* 105 *N.J.* 262, 270 (1987)), includes the following quote:

> law enforcement officers are often placed in confrontational situations which may result in a complaint being filed against them for disorderly conduct, including offensive language, shoving, offensive touching, etc. While these disorderly persons offenses should be taken very seriously and dealt with sternly, they are not so serious in every case as to warrant the loss of position or the permanent, lifetime disqualification from holding such office.

Our dissenting colleague contends that forfeiture must be "inherent" in the complaint and the conviction, but in our view the Governor's statement clearly asserts that it is the facts underlying harassment complaints and convictions which determine whether a forfeiture will result (as well as whether waiver is appropriate). There is no requirement in the Code that relevant complaints or convictions refer to defendant's employment in order to trigger forfeiture.

As the parties framed it, the issue in this case is whether the Merit System Board's action which terminated Moore's public employment as a correction officer was supported by the

record. Both parties called the Board's action a *N.J.S.A.* 2C:51–2 forfeiture. It may be argued that Moore's civil service "forfeiture" was not a *N.J.S.A.* 2C:51–2 "forfeiture" but a determination that *N.J.S.A.* 2C:51–2 was applicable and that if Moore's conviction made *N.J.S.A.* 2C:51–2 applicable, the Merit System Board was entitled to impose "automatic" employment termination administratively without having to find that Moore's conduct met any other administrative criteria.[10] In the posture of this appeal, we have no occasion to examine the Board's authority on this or any other ground.

Moore was convicted of deliberate and threatening conduct toward Department personnel in retaliation for being disciplined. While that conduct did not take place during business hours, we cannot find that the conviction therefor became less incompatible with Moore's corrections employment because the conduct took place at his superior's home. On the contrary, Moore's threatening presence at Morris' home might well have an enhanced chilling effect on Morris' employment ability. Moore's conduct threatened the future work of the Department respecting the competence of both employees. Public safety was implicated and the elements of *N.J.S.A.* 2C:51–2a(2) were properly established.

We are satisfied, as was the Board, that Moore's criminal conviction for harassing his immediate superior was one "involving or touching" his employment as a senior correction officer and that, therefore, he was properly removed from his employment effective with the date of his conviction. The final

---

[10]*See N.J.A.C.* 4A:2–2.7(c):

Where an employee has pled guilty or been convicted of a crime or offense which is *cause* for forfeiture of employment under N.J.S.A. 2C:51–2, the departmental hearing shall be limited to the *issue of the applicability* of N.J.S.A. 2C:51–2. If N.J.S.A. 2C:51–2 *is found not applicable,* related disciplinary charges, if any, may be addressed at the hearing. [Emphasis added.]

decision of the Merit System Board is accordingly affirmed.[11]

SKILLMAN, J.A.D., dissenting.

I am unable to agree with the majority's expansive interpretation of the forfeiture of public employment provision of *N.J.S.A.* 2C:51-2a(2) and therefore dissent.

Appellant James E. Moore, Jr. was charged by Michael Morris in the White Township Municipal Court with two petty disorderly persons offenses of harassment, one by means of a telephone call in which he used offensively coarse and threatening language, in violation of *N.J.S.A.* 2C:33-4a, and the other by repeatedly coming to Morris' home in his automobile, racing the engine, and leaving at a high rate of speed, in violation of *N.J.S.A.* 2C:33-4c. Moore, appearing *pro se*, was found guilty of both charges in municipal court. After merging the conviction under *N.J.S.A.* 2C:33-4c into the conviction under *N.J.S.A.* 2C:33-4a, the municipal court imposed a $100 fine and a $30 Violent Crimes Compensation Board penalty. Moore did not appeal from this conviction.

Shortly thereafter, the Department of Corrections (Department) served Moore, a Senior Corrections Guard, with a preliminary notice of disciplinary action charging him with conduct unbecoming an employee in public service, in violation of *N.J.A.C.* 4:1-16.9(a)(11),[1] based upon his municipal court conviction. After the charges were sustained at a departmental hearing, Moore was ordered removed from his position.

Moore appealed his removal to the Merit System Board (Board). In response, the Department asserted that Moore had automatically forfeited his public employment pursuant to *N.J.*

---

[11]Moore's waiver application is pending before the municipal court. We do not pass upon its merits, or even whether the Board's ruling triggered an *N.J.S.A.* 2C:51-2c penalty.

[1]Effective October 5, 1987, this regulation was recodified as *N.J.A.C.* 4A:2-2.-3(a)6.

*S.A.* 2C:51–2a(2) as a result of his convictions in municipal court of offenses "involving or touching" his public employment.[2] The Department presented testimony that the victim of the harassment adjudicated in municipal court, Michael Morris, was a Captain in the Department and had been Moore's supervisor. In that capacity, Morris investigated a prior disciplinary matter involving Moore, drafted the charges, presented the case at a department hearing and assisted in presenting the case at a hearing before the Office of Administrative Law. The Department also presented evidence that Moore's acts of harassment against Morris occurred the day after the Board reduced the penalty in the prior disciplinary action from removal to a 30 day suspension. According to Morris, Moore called him at home and said: "[D]on't you like to play with people's lives. I'm gonna f--k with your life." Moore also drove around the area of the captain's home later that day.

Based on this evidence, recounted in greater detail in the majority opinion, an Administrative Law Judge (ALJ) found that Moore's acts of harassment were "integrally related" to Morris' role in the prior disciplinary proceeding against him. The ALJ concluded that "appellant's conviction for harassment of his immediate supervisor is precisely what the Legislature had in mind when it required that the offensive conduct merely touch the office, position or employment." Consequently, the ALJ recommended that the Board find that Moore's conviction had resulted in the forfeiture of his employment. The Board

---

[2]It is unclear whether the first time the Department invoked *N.J.S.A.* 2C:51–2a(2) was at the hearing before the Board. The preliminary and final notices of disciplinary action issued by the Department charged Moore with conduct unbecoming an employee in the public service and the final notice of disciplinary action simply recited that the charge had been sustained. Neither notice mentioned *N.J.S.A.* 2C:51–2a(2). However, counsel for the Department indicated at oral argument that *N.J.S.A.* 2C:51–2a(2) had been relied upon at the departmental hearing. No transcript of that hearing or of the departmental hearing officer's decision has been submitted on this appeal.

accepted this recommended decision.[3]

On appeal, Moore argues that (1) he was not holding public employment at the time he committed the alleged acts of harassment, because his removal from public employment for the prior disciplinary infraction was then still in effect and (2) even if he is deemed to have been a public employee at the time of the alleged acts of harassment, the offense for which he was convicted did not "involve" or "touch" his public employment. I agree substantially for the reasons expressed in the majority opinion that Moore held public employment when the conduct which formed the basis of his conviction took place. However, I dissent from the majority's conclusion that Moore was convicted of an offense "involving or touching" his employment.

Preliminarily, I note that there is serious question whether the Board has the authority to adjudicate a forfeiture of public employment pursuant to *N.J.S.A.* 2C:51-2a. An administrative agency may only exercise such authority as has been delegated to it by the Legislature. *In re Closing of Jamesburg High School*, 83 *N.J.* 540, 549 (1980). Although the Board has broad authority to adjudicate disciplinary charges against a public employee and to impose an appropriate penalty, including "removal" from public employment, *N.J.S.A.* 11A:2-6a, it does not have express authority to adjudicate "forfeitures" of public employment.[4] A forfeiture of public employment under *N.J.S.*

---

3The Board's final decision also adjudicated a claim by Moore for backpay arising from the Board's reduction of the penalty imposed upon him in the prior disciplinary action. That aspect of the Board's decision has not been appealed.

4On October 5, 1987, the Board adopted *N.J.A.C.* 4A:2-2.7(c), which purports to confer authority on any appointing authority subject to Title 11A to adjudicate the applicability of *N.J.S.A.* 2C:51-2. In addition, the Board purportedly has the authority under *N.J.A.C.* 4A:2-2.8 to review an appointing authority's declaration of a forfeiture of public employment. The record does not indicate whether appointing authorities or the Board have asserted authority to pass on claims of forfeiture of public employment prior to adoption of this administrative regulation.

*A.* 2C:51–2a is a collateral disability resulting from a conviction of a criminal offense and has been described as "self-executing." *State v. Musto,* 187 *N.J.Super.* 264, 305 (Law Div.1982), aff'd o.b. 188 *N.J.Super.* 106 (App.Div.1983). Therefore, I question whether this is an appropriate subject for administrative adjudication by the Board. Rather, it would seem more appropriate for any question which may exist concerning a forfeiture of public employment to be determined by the sentencing court, and if the sentencing court is unable to make this determination, such as where a public official's conviction has occurred in federal court, *see State v. Musto, supra,* by the Law Division in an action in lieu of prerogative writs. This conclusion is supported by the fact that the prior reported cases involving forfeitures of public employment under *N.J.S.A.* 2C:51–2a have all arisen in the Law Division. *See Bevacqua v. Renna,* 213 *N.J.Super.* 554 (App.Div.1986); *State v. Pitman,* 201 *N.J.Super.* 21 (App.Div.1985); *New Jersey Turnpike Employees v. New Jersey Turnpike Auth.,* 200 *N.J.Super.* 48 (App.Div.1985), certif. den. 101 *N.J.* 294 (1985); *State v. Lore,* 197 *N.J.Super.* 277 (App.Div.1984); *State v. Musto, supra; O'Halloran v. DeCarlo,* 156 *N.J.Super.* 249 (Law Div.1978), aff'd o.b. 162 *N.J.Super.* 174 (App.Div.1978), certif. den. 79 *N.J.* 469 (1978), *cert.* den. 442 *U.S.* 917, 99 S.Ct. 2837, 61 L.Ed.2d 284 (1979); *State v. Botti,* 189 *N.J.Super.* 127 (Law Div.1983).

However, Moore does not question the Board's authority to adjudicate an alleged forfeiture under *N.J.S.A.* 2C:51–2a. Moreover, the question whether Moore forfeited his employment as a result of his petty disorderly persons conviction can be decided, in my view, based solely on the complaint and judgment of conviction in municipal court, without considering the proceedings before the Board. Therefore, the merits of this appeal can be decided without ruling upon the Board's jurisdiction.

The forfeiture of public employment provisions of *N.J.S.A.* 2C:51–2 are one of a number of legal disabilities imposed upon

offenders under the Code.[5] Thus, the Code provides that persons convicted of crimes are prohibited from voting, *N.J.S. A.* 2C:51–3a, serving on a jury, *N.J.S.A.* 2C:51–3b, or purchasing a firearm, *N.J.S.A.* 2C:58–3c(1). In addition, it provides that any person convicted of a drug offense shall forfeit the right to operate a motor vehicle for a period of not less than six months. *N.J.S.A.* 2C:35–16.

A forfeiture of a public office, position or employment under *N.J.S.A.* 2C:51–2a occurs automatically upon a conviction for (1) "an offense involving dishonesty," *N.J.S.A.* 2C:51–2a(1); (2) "a crime of the third degree or above," *N.J.S.A.* 2C:51–2a(1); (3) "an offense involving or touching such office, position or employment," *N.J.S.A.* 2C:51–2a(2); or (4) any other offense for which a statute other than the Code or the Constitution provides for a forfeiture. *N.J.S.A.* 2C:51–2a(3).[6] In addition, *N.J.S.A.* 2C:51–2c provides that upon conviction for "an offense involving or touching on [a person's] public office, position or employment [that person] shall be forever disqualified from holding any office or position of honor, trust or profit under the

---

[5]For a general discussion of the history of collateral disabilities imposed as a result of criminal convictions and recommendations for changes in such provisions, see Special Project, "The Collateral Consequences of a Criminal Conviction," 23 *Vand.L.Rev.* 929 (1970).

[6]Although *N.J.S.A.* 2C:51–2a appears to have been based partly on section 306.2 of the Model Penal Code, the language of the two provisions differs in some significant respects. Section 306.2 provides for a forfeiture of "public office" upon conviction of a "felony" or a crime involving "dishonesty," which is similar to *N.J.S.A.* 2C:51–2a(1). However, the part of section 306.2(2) providing that a public office is forfeited upon conviction "of a crime involving malfeasance in such office" differs significantly from the language of *N.J.S.A.* 2C:51–2a(2). Thus, *N.J.S.A.* 2C:51–2a(2) appears to have been derived from *N.J.S.A.* 2A:135–9, which formerly provided that a public office or position would be forfeited upon conviction for "a misdemeanor or high misdemeanor touching the administration of his office or position," rather than the Model Penal Code. Consequently, there are no decisions from other jurisdictions which are helpful in interpreting *N.J.S.A.* 2C:51–2a(2).

State or any of its administrative or political subdivisions." [7]

In construing *N.J.S.A.* 2C:51–2a(2), it is appropriate to compare a forfeiture of public employment with a proceeding before the Board for the removal of a public employee under *N.J.S.A.* 11A:2–13 *et seq.* In a proceeding under Title 11A, the Board is authorized not only to determine whether a public employee has committed a disciplinary infraction but also what penalty should be imposed. *N.J.S.A.* 11A:2–19. Thus, the Board may consider the seriousness of the disciplinary infraction committed by the public employee in light of the nature of his position and his past employment record in determining what penalty is appropriate under all the circumstances. *See Henry v. Rahway State Prison,* 81 *N.J.* 571, 580 (1980); *New Jersey Dept. of Corrections v. Torres,* 164 *N.J.Super.* 421, 428–429 (App.Div.1978), aff'd 81 *N.J.* 571 (1980). In contrast, upon commission of an offense which falls within *N.J.S.A.* 2C:51–2a, the forfeiture of public employment is automatic. There is no opportunity for consideration of the individual circumstances of the offense, the sensitivity of the position occupied by the public employee or his past employment record. In light of the inflexibility and harshness of an automatic forfeiture of public employment, I would give *N.J.S.A.* 2C:51–2a

---

[7] *N.J.S.A.* 2C:1–4(b) provides in part that "[c]onviction of [disorderly persons and petty disorderly persons offenses] shall not give rise to any disability or legal disadvantage based on conviction of a crime." In *State v. Musto, supra,* 188 *N.J.Super.* at 313–314, the court suggested that *N.J.S.A.* 2C:1–4(b) might be construed to exclude disorderly persons offenses from the application of *N.J.S.A.* 2C:51–2. However, in several subsequent opinions, we stated, without referring to *N.J.S.A.* 2C:1–4(b), that *N.J.S.A.* 2C:51–2 applies to convictions for disorderly persons offenses. *Bevacqua v. Renna, supra,* 213 *N.J.Super.* at 554; *State v. Pitman, supra,* 201 *N.J.Super.* at 21. By the enactment of chapter 427 of the Laws of 1987, the Legislature authorized the court, upon application of the Attorney General or county prosecutor, to waive any forfeiture or disqualification imposed under *N.J.S.A.* 2C:51–2a, b or c upon conviction of a disorderly persons or petty disorderly persons offense. *See N.J.S.A.* 2C:51–2d. Such a waiver would be unnecessary if *N.J.S.A.* 2C:51–2 did not apply to disorderly persons offenses. Therefore, the Legislature appears to have ratified our interpretation of *N.J.S.A.* 2C:51–2 in *Bevacqua* and *Pitman.*

the same strict interpretation ordinarily accorded forfeiture statutes. As indicated in *Uricoli v. Police & Firemen's Retirement System*, 91 *N.J.* 62 (1982):

> [F]orfeiture—whether of one's pension or any other property or benefit to which one is otherwise entitled—is a penalty or a punishment for wrongful conduct. As such, "[a]ll elements of doubt must be resolved in favor of the person against whom the forfeiture is sought." [91 *N.J.* at 76, quoting *State v. LaBella*, 88 *N.J.Super.* 330, 338 (Law Div.1965) (citations omitted)].

And since forfeiture of public employment is an additional sanction provided by the Code of Criminal Justice for the commission of a criminal offense, the general principle that penal statutes are strictly construed provides further support for a strict interpretation of *N.J.S.A.* 2C:51–2a. *See State v. Valentin*, 105 *N.J.* 14, 17 (1987).

A strict construction of *N.J.S.A.* 2C:51–2a(2) requires that its application be limited to circumstances where either the offense inherently touches or involves a public office, position or employment or the specific charges of which a public official or employee has been found guilty touched or involved his public office, position or employment. Certain offenses, such as misconduct in office, *N.J.S.A.* 2C:30–2, are inherently related to public office or employment. Other offenses, such as bribery, *N.J.S.A.* 2C:27–2, extortion, *N.J.S.A.* 2C:20–5d, falsification of public records, *N.J.S.A.* 2C:21–3a, or theft, *N.J.S.A.* 2C:20–1, may also relate to an offender's public office or employment. Where such a relationship exists, it ordinarily is revealed on the face of the indictment, accusation or complaint and the judgment of conviction.

In my view, an offense should be found to involve or touch a public office, position or employment, requiring automatic forfeiture of that office, position or employment, only where a defendant has been charged and found guilty of such an offense in a criminal proceeding. This interpretation of *N.J.S.A.* 2C:51–2a(2) would limit its application to situations where an offense directly relates to the performance of public duties and thus assure that a forfeiture of public office or employment would be imposed only for "a violation of the public trust."

*State v. Musto, supra,* 187 *N.J.Super.* at 312. Moreover, consistent with the principle that a forfeiture of public employment is "self-executing," *id.* at 305, this interpretation would avoid the need to conduct a proceeding collateral to a criminal trial in order to determine whether an offense had some indirect relationship to a public office or employment. In addition, it would reduce the risk that a public employee would plead guilty to a disorderly persons charge or defend himself *pro se,* without realizing that one consequence of a conviction will be a forfeiture of his job and a lifetime disqualification from public employment. *See State v. Heitzman,* 209 *N.J.Super.* 617 (App. Div.1986), aff'd o.b. 107 *N.J.* 603 (1987).

The prior decisions of this court are generally consistent with this interpretation of *N.J.S.A.* 2C:51–2a(2).[8] In *Hayes v. Hudson Cty. Bd. of Freeholders,* 116 *N.J.Super.* 21, 24 (App.Div. 1971), we noted the parties agreement that "a violation of *N.J.S.A.* 2A:135–8(c) is an offense 'touching the administration of his office' by the person convicted thereof, for the purpose of *N.J.S.A.* 2A:135–9 [the predecessor to *N.J.S.A.* 2C:51–2a(2) ]." Since a violation of *N.J.S.A.* 2A:135–8(c), which made it a misdemeanor for a local public official to have an interest in goods, supplies or properties furnished to a local public entity, was a crime which inherently touched public office, no collateral proceedings were required to determine that a conviction resulted in a forfeiture. In *State v. Musto, supra,* 187 *N.J.Super.* at 271–282, the court concluded that a state senator's conviction of various federal crimes resulted in the forfeiture of his office because the "gist, or underlying elements" of those federal crimes came within *N.J.S.A.* 2C:51–2a. This conclusion was reached without conducting any collateral evidential inquiry in

---

[8]While the Supreme Court has referred to *N.J.S.A.* 2C:51–2a(2) in dealing with other issues, such as the forfeiture of public pensions, *Uricoli v. Police & Firemen's Retirement System, supra,* 91 *N.J.* at 75; *Masse v. Public Employees Retirement System,* 87 *N.J.* 252, 262 (1981), it has not had occasion to interpret this section. Thus, the only relevant authorities are decisions of this court and the Law Division.

the state court. In *State v. Lore, supra,* 197 *N.J.Super.* at 277, a police officer was convicted of misconduct in office for committing an assault while performing his official duties. Since misconduct in office is a crime inherently touching or involving public employment, no collateral proceedings were required to establish the forfeiture. In fact, it was imposed as part of the sentence in the criminal trial. In *State v. Pitman, supra,* 201 *N.J.Super.* at 21, a correction officer was indicted for misconduct in office involving an assault upon an inmate.[9] However, the charges were downgraded pursuant to plea negotiations to the disorderly persons offense of obstructing the administration of law or other governmental function, in violation of *N.J.S.A.* 2C:29–1. Thus, the officer was found guilty of an offense inherently involving or touching public employment. Moreover, since the sentence imposed by the trial judge included the forfeiture of public employment, no collateral proceedings were required. Thus, our prior decisions sustaining forfeitures of public office under *N.J.S.A.* 2C:51–2a(2) have all involved public employees who were charged and found guilty in a criminal trial of an offense "involving or touching" their public office or position.[10]

---

[9]Although two other public employees prosecuted with Pitman were also found to have forfeited their public employment, only Pitman filed a notice of appeal.

[10]*State v. Bielecki,* 196 *N.J.Super.* 332 (App.Div.1984), certif. den. 99 *N.J.* 216 (1984), which is heavily relied upon by the majority (at 384), did not involve *N.J.S.A.* 2C:51–2a(2). Rather, it involved *N.J.S.A.* 2A:81–17.2a3, which provides for the removal of "[a]ny public employee who *admits* the commission of a misdemeanor or high misdemeanor relating to his employment or touching the administration of his office or position before any court, grand jury or the State Commission of Investigation." (Emphasis added). Bielecki was never charged with a crime. Thus, there was no criminal charge or judgment of conviction upon which to base a determination as to whether his offense was one "relating to his employment or touching the administration of his office." Therefore, this determination was based upon a transcript of the grand jury proceeding in which he "admitted" the offense, as required by *N.J.S.A.* 2A:81–17.2a3. Moreover, the offense which the trial judge found Bielecki had committed was "falsely swearing before a State Grand Jury investigating acts of official corrup-

The conclusion that *N.J.S.A.* 2C:51–2a(2) only applies to a public employee found guilty in criminal proceedings of offenses involving or touching public employment requires the reversal of the Board's declaration that Moore forfeited his position. Moore was charged with the petty disorderly persons offense of harassment. This offense does not inherently implicate the performance of public responsibilities. Moreover, nothing in the complaint or judgment of conviction suggests that Moore was convicted of a work-related offense. Therefore, the proceeding in municipal court did not result in a "self executing" forfeiture of Moore's public employment, *see State v. Musto, supra,* 187 *N.J.Super.* at 305, and, in my view, the Department had no authority under *N.J.S.A.* 2C:51–2a(2) to present evidence to the Board subsequent to the conviction to show that Moore's petty disorderly offense actually "touched" or "involved" his public employment.

Moreover, even assuming that the Department was entitled to present evidence to show that there were additional elements to Moore's offense not adjudicated in municipal court, I would still conclude that his offense was not one "involving or touching" his public employment. The offense did not occur during working hours. In fact, Moore was suspended from his employment at the time due to his prior disciplinary infraction. Furthermore, the offense did not occur at Moore's place of employment but rather at the home of his supervisor approximately 40 miles away. Consequently, the offense did not immediately impact upon the operation of the correctional facility at which Moore was employed. Although Moore's conduct

---

tion." 196 *N.J.Super.* at 334. In rejecting Bielecki's argument that this offense did not relate to or touch his employment, we noted that "the underlying factual basis of the false swearing admission ... was the investigation of misappropriation of property donated to the municipality or receipt of stolen goods by officers of the Mount Olive Police Department." 196 *N.J.Super.* at 337. Such an investigation obviously has a far more direct relationship to public employment than the harassment of a supervisor in a non-work related context.

undoubtedly would have an adverse effect on his long-term relationship with his supervisor, the same may be said of any hostile act by an employee against a supervisor. And even if Moore's offense was committed in reaction to his supervisor's involvement in the prior disciplinary proceedings, the relevant inquiry should not be whether the offense was motivated by an incident occurring during his public employment but rather whether the offense itself touches or involves that employment.

I find no support for the view expressed in the majority opinion (at 385–387) that an automatic forfeiture of public employment under *N.J.S.A.* 2C:51–2a(2) turns on an individualized assessment of the particular duties of a public employee. *N.J.S.A.* 2C:51–2a(2) applies to all public officers and employees. Nothing in the language of this section or any prior decision of this court suggests that its application varies depending on the nature of a public employee's responsibilities. Indeed, the Legislature used precisely the same language in *N.J.S.A.* 2C:51–2c to describe those offenses which would result in a lifetime disqualification from public office or employment. In addition, the part of *N.J.S.A.* 2C:51–1a(4) quoted by the majority (at 387–389) is inapplicable, because a forfeiture of public employment pursuant to *N.J.S.A.* 2C:51–2a(2) is a disability "[p]rovided by ... the code" and thus expressly authorized by *N.J.S.A.* 2C:51–1a(2). Furthermore, the individualized assessment of the relationship between an offense and a public employee's duties suggested by the majority is inconsistent with the principle that a forfeiture of public employment under *N.J.S.A.* 2C:51–2a is a "self-executing" consequence of a conviction.

I am also concerned that the majority's expansive interpretation of *N.J.S.A.* 2C:51–2a(2) will result in public employees forfeiting their jobs under a variety of circumstances which could not have been intended by the Legislature. Minor disputes between co-employees or employees and supervisors are

fairly common. Such disputes may result in conduct which would support a conviction for simple assault, *N.J.S.A.* 2C:12–1a, the use of offensive language, *N.J.S.A.* 2C:33–2b or, as in this case, harassment, *N.J.S.A.* 2C:33–4. A public employee who drinks too much at an office Christmas party and pushes a supervisor or directs offensive language at him should not be exposed to automatic forfeiture of his job and lifetime disqualification from public employment.

The conclusion that Moore did not forfeit his public employment under *N.J.S.A.* 2C:51–2a(2) would not prevent the Department from taking effective disciplinary action. The Department could pursue its disciplinary action against Moore for conduct unbecoming an employee in public service and the Board could order his removal if it found that disposition appropriate upon a full review of the circumstances of the offense, Moore's prior disciplinary record and the nature of his position. *See Henry v. Rahway State Prison, supra,* 81 *N.J.* at 571; *Moorestown Tp. v. Armstrong,* 89 *N.J.Super.* 560 (App.Div.1965), certif. den. 47 *N.J.* 80 (1966).

Accordingly, I would reverse the decision of the Merit System Board adjudicating that Moore's conviction for harassment resulted in the automatic forfeiture of his public employment and remand the matter to that agency to determine whether Moore was guilty of conduct unbecoming an employee in public service and, if so, what penalty should be imposed for that disciplinary infraction.[11]

---

[11]The effect of the municipal court conviction in the disciplinary proceeding before the Board would be governed by the principles set forth in *In re Tanelli,* 194 *N.J.Super.* 492 (App.Div.1984), certif. den. 99 *N.J.* 181 (1984).