200 N.J. Super. 48 (1985)
490 A.2d 338
NEW JERSEY TURNPIKE EMPLOYEES UNION, LOCAL NO. 194 I.F.P.T.E., AFL-CIO, AND ROBERT PAWLYZYN, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY TURNPIKE AUTHORITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1984.
Decided March 25, 1985.
*51 Before Judges FRITZ, GAULKIN and LONG.
John F. Pilles, Jr. argued the cause for appellants (Schlesinger, Schlosser, Foy & Harrington, attorneys; Mr. Pilles, on the brief; Thomas P. Foy, of counsel).
Mary-Elizabeth Garrity argued the cause for respondent (Herbert I. Olarsch, attorney).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Robert Pawlyzyn and his union appeal from the dismissal by the trial judge of their complaint to compel arbitration in the matter of the termination of Pawlyzyn. We affirm, noting especially that we have only considered issues raised by the parties. Cannon v. Krakowitch, 54 N.J. Super. 93, 96 (App. Div. 1959).
Pawlyzyn was a toll collector for defendant New Jersey Turnpike Authority (Authority). Upon a discovery of his possession of cash drawer money he had reported missing he was first suspended and later discharged. As a part of a plea bargain Pawlyzyn pleaded guilty to one count of a two-count indictment charging him with violation of N.J.S.A. 2C:20-9, theft by failure to make required disposition of property received.[1] Although arbitration had been scheduled prior to the entry of the plea, it had been adjourned and had not been undertaken at the time the plea was entered. Following the plea, the Authority rejected requests for arbitration. This action resulted.
*52 On the return date of the order to show cause, the trial judge announced his satisfaction respecting the applicability of N.J.S.A. 2C:51-2, opining that "... the penalty prescribed in 2C:51-2 is appropriately applied in all these circumstances to the employees and all office and position holders of the New Jersey Turnpike Authority. The Statute applies to them. The Authority therefore had to fire the employee, and there is no occasion for arbitration." Consistently with this view, he dismissed the complaint.
Expressed in eight points in their brief, plaintiffs' appeal focuses wholly on issues respecting the applicability of N.J.S.A. 2C:51-2. In pertinent part this disenfranchises a person from
holding any public office, position, or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof, who is convicted of an offense ... if:
He is convicted under the laws of this State of an offense involving dishonesty or of a crime of the third degree or above or under the laws of another state or of the United States of an offense or a crime which, if committed in this State, would be such an offense or crime;
He is convicted of an offense involving or touching such office, position or employment; ....
Plaintiffs argue that neither the Authority nor the individual plaintiff is included within the identified classes. They insist that the statute is "too vague for enforcement ... since said statute fails to define with sufficient clarity that class of persons who are amenable thereto and included therein." They suggest that there are no compelling public policy reasons for the inclusion within the statutory ambit of such as Pawlyzyn. They ask this court to deny enforcement of the statute in any event "since such penal provision violates the property and liberty interests of Pawlyzyn as created by the collective bargaining agreement." We find none of this persuasive.
Plaintiffs argue, not without superficial appeal, that Garden State Pky. Emp. v. N.J. Highway Auth., 105 N.J. Super. 168 (App.Div. 1969) stands for the proposition that in statutes such as the one here in question, reference to state agencies does not include authorities. That the Legislature was aware of this at *53 the time of the enactment of N.J.S.A. 2C:51-2 is evidenced by the enactment, following the Garden State Pky. Emp. case, of L. 1969, c. 43[2] which added "authorities" to the statute concerned in that case, presumably as a response to the appellate decision. On the other hand, Turnpike Authority employees such as Pawlyzyn are "[p]ersons in public employment" and thus share the burdens and the benefits of N.J.Const. (1947), Art. I, par. 19, despite the fact that that provision refers only to "political subdivisions or agencies" and does not include reference to authorities. N.J. Turnpike Auth. v. Amer., etc., Employees, 83 N.J. Super. 389 (Ch.Div. 1964); see Delaware River and Bay Auth. v. International Org. etc., 45 N.J. 138 (1965).
In any event, it becomes our obligation and purpose to ascertain the intent of the Legislature. Clifton v. Zweir, 36 N.J. 309, 322-323 (1962); see County of Monmouth v. Wissell, 68 N.J. 35, 43 (1975). In doing this we consider the purpose of the legislation, Continental Cas. Co. v. Knuckles, 142 N.J. Super. 162 (App.Div. 1976), and "[w]here a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter." N.J. Builders, etc., Ass'n v. Blair, 60 N.J. 330, 338 (1972). As we are taught by Clifton v. Zweir, supra, "We cannot solve problems of this kind merely by mechanically selecting and applying a canon or maxim of statutory construction and mouthing it as the reason for the result reached." 36 N.J. at 323. Our approach should be "to seek the sense of the situation." Ibid.
With these standards in mind we move on the problem as Judge Cardozo instructed: "When all the world can see what sensible legislators in such a contingency would wish that we should do, we are not to close our eyes as judges to what we must perceive as men." People v. Knapp, 230 N.Y. 48, 63, 129 *54 N.E. 202, 208 (Ct. of App. 1920), cert. den. sub nom. State Tax Comm'r v. New York ex rel. Alpha Portland Cement Co., 256 U.S. 702, 41 S.Ct. 624, 65 L.Ed. 1179 (1921). We are persuaded that the Legislature would not have us impose the forfeiture penalty  a harsh response to a problem serious enough to justify the harshness  on only a limited class of state employees, permitting other equally miscreant criminals employed and paid by the same government to escape the sanction completely. We are confident that whatever was the case with respect to the check-off of union dues in Garden State Pky. Emp., in this statute, which announces our public policy in its provision that "person[s] holding any public office, position, or employment ... under the government of this State" must avoid criminal conduct or sacrifice their state position, the Legislature intended to include all employees whose employment was "under the government of this State." Employees of the New Jersey Turnpike Authority  which, pursuant to N.J.S.A. 27:23-3, is "established in the Department of Transportation"  come within this classification.
Sensitive to the indisputable proposition that we must conform to the law of any issue squarely decided by our court of last resort, In re Education Association of Passaic, Inc., 117 N.J. Super. 255, 261 (App.Div. 1971), certif. den. 60 N.J. 198 (1972), we acknowledge New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949), which holds that the Authority is a corporate entity independent of the State. We believe it significant that this case turned on analysis of the nature and activities of the Authority (as distinguished from its employees) in the light of the problem involved, to wit the responsibility vel non of the State for its debts. The same is to be said for Garden State Pky. Emp., which relied on New Jersey Turnpike Authority. We do not challenge nor depart from the law enunciated in these two cases. Rather we say that the law there projected was intended to speak to the privileges and obligations of governmental agencies or authorities. We are satisfied that the law expressed in N.J.S.A. 2C:51-2 was intended *55 to speak to the privileges and obligations of employees of government.
The argument forwarded by plaintiffs that Pawlyzyn "was neither appointed nor elected to his employment position within the meaning of [N.J.S.A. 2C:51-2]" is frivolous. If N.J.S.A. 2C:51-2 applies to the Authority, then "public ... employment" as used therein covers all its employees, and the phrase "elective or appointive" is one of inclusion rather than exclusion. The statement from plaintiffs' brief quoted immediately above not only tempts us to inquire of counsel respecting the manner in which Pawlyzyn secured his employment if he was neither elected nor appointed to the position, but reassures us, by virtue of reference to "his employment position," that the statutory qualification of "holding ... employment ... under the government of this State" has been satisfied. This statutory definition of the employment which brings an individual within the purview of the statute is abundantly clear to us. Accordingly, we believe plaintiffs' assertion that N.J.S.A. 2C:51-2 is too vague for enforcement since it "fails to define with sufficient clarity that class of persons who are amenable thereto and included therein" is patently without merit. R. 2:11-3(e)(1)(E).
Plaintiffs ask us to deny enforcement to N.J.S.A. 2C:51-2 "since such penal provision violates the property and liberty interests of Pawlyzyn as created by the collective bargaining agreement and as recognized by the State." As to this we need not referee a contest between asserted "property and liberty interests" and protection of the public as a matter of public policy by enhancement of penalties for criminal conduct, for we are satisfied that the plea of guilty by Pawlyzyn waived any further assertion of procedural rights under the collective bargaining agreement. Were it otherwise the collective bargaining agreement would be in contravention of the law and therefore unenforceable in any event. As is said in Vasquez v. Glassboro Service Ass'n, Inc., 83 N.J. 86 (1980),

*56 In the past, courts in New Jersey have refused to enforce contracts that violate the public policy of the State. Houston Petroleum Co. v. Automotive Products Credit Ass'n, 9 N.J. 122, 130 (1952). No contract can be sustained if it is inconsistent with the public interest or detrimental to the common good. Driscoll v. Burlington-Bristol Bridge Co., 10 N.J. Super. 545, 575 (Ch.Div. 1950), mod. 8 N.J. 433 (1952), cert. den. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952). Contracts have been declared invalid because they violate statutes, promote crime, interfere with the administration of justice, encourage divorce, violate public morality, or restrain trade.... With respect to employment contracts that have an otherwise lawful purpose, courts have afforded judicial sanction to post-employment restrictive covenants only to the extent that the covenants are reasonable and comport with public policy. [At 98-99.]
On the other hand, we apparently are called upon to referee the contest between that which plaintiffs in their brief call "the strong public policy behind enforcement of arbitration provisions" and that which we have found to be the strong and enunciated public policy against retaining confessed criminals in government service. In our judgment this is no contest at all, the latter consideration surviving by virtue of plain statutory meaning and common sense.
The dismissal of the complaint by Judge Cohen is affirmed.
NOTES
[1] Neither party has provided us with a copy of the indictment or other record of the criminal action. However, both parties concur in their respective statements of fact regarding the statement appearing in the text, so we accept it as the fact.
[2] This section was re-enacted with only a minor addition and a retroactivity clause. L. 1971, c. 275.