237 N.J. Super. 371 (1989)
568 A.2d 81
GERARD PASTORE, SR., PLAINTIFF-APPELLANT, AND GERARD PASTORE, JR., PLAINTIFF,
v.
COUNTY OF ESSEX AND NICHOLAS AMATO, BOTH OFFICIALLY AND INDIVIDUALLY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 22, 1989.
Decided December 15, 1989.
*372 Before Judges KING, BAIME and KEEFE.
Fox and Fox, attorneys for appellant (Dennis J. Alessi of counsel; Dennis J. Alessi and Stacey B. Rosenberg on the brief).
Apruzzese, McDermott, Mastro & Murphy, attorneys for respondents (Sharon P. Margello on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This is an appeal from a summary judgment entered by the Superior Court, Law Division, dismissing plaintiff Gerard Pastore, Sr.'s claim that he was wrongfully discharged from his employment as greens superintendent of all Essex County golf courses. In a written opinion, the Law Division judge determined that plaintiff was disqualified from serving in the position by reason of his prior convictions. We agree and affirm essentially for the reasons expressed by Judge Brochin in his opinion rendered on July 14, 1988.

I.
The facts are not in dispute and are substantially a matter of public record. On November 10, 1977 plaintiff was convicted of conspiracy (N.J.S.A. 2A:98-1) and numerous counts of obtaining money by false pretenses (N.J.S.A. 2A:111-1), forgery (N.J.S.A. 2A:109-1) and uttering a forged instrument (N.J.S.A. 2A:109-1). We need not recount at length the facts surrounding these convictions. Suffice it to say, the record reflects that *373 plaintiff, while serving as a supervisor of the Newark Youth Corps, falsified various employment applications and thereby obtained payroll checks which he forged and cashed. As a result of these convictions, plaintiff served nine months in the Essex County Jail and forfeited his employment with the City of Newark pursuant to N.J.S.A. 2C:51-2a.
Following his incarceration, plaintiff commenced employment with Essex County as a research assistant at the county golf courses. There followed a series of rapid promotions ultimately leading to plaintiff's provisional appointment as manager of golf facilities and later as greens superintendent of all three of Essex County's golf courses. Despite the voluminous and detailed record, it is difficult to differentiate between plaintiff's duties as manager and his responsibilities as greens superintendent. Nevertheless, it appears that plaintiff played a substantial role in managing the golf courses. At times, plaintiff handled revenues at the Hendrick's Golf Course well in excess of $50,000 a month. Indeed, in plaintiff's complaint he alleged that he was responsible for increasing revenues by some $300,000 each year.
Because plaintiff does not contest his dismissal as manager of golf facilities, this appeal pertains solely to his discharge from his position as greens superintendent. We thus limit our discussion to those duties and responsibilities embraced in that post. In that respect, the civil service job description reads in pertinent part as follows:
DEFINITION:
Under direction, directs and administers a comprehensive maintenance program of regulation golf courses; directs employees engaged in carrying out the specialized maintenance program; prepares budgets requests and administers an approved budget; may develop plans for improvement of golf courses; does related work as required.
EXAMPLES OF WORK:
Plans and supervises a variety of maintenance programs related to the proper care of the turf and land areas of golf courses; gives suitable assignments and instructions to assigned personnel; prepares budget estimates; requisitions, receives, accounts for, stores and issues materials and supplies; recommends the selection of specific equipment for maintenance of golf courses; ... *374 supervises and works with the foremen and their crews in maintaining golf courses; schedules the men so as to provide full coverage during the peak season, as well as the remainder of the year; ... directs the operation and repair of underground irrigation systems; insures the proper care and use of assigned equipment, materials and supplies; operates within the framework of established Park Commission policy; keeps needed records of personnel, equipment, materials, work done, and time spent; prepares suitable reports.
The depositions and affidavits submitted to the Law Division disclose that as greens superintendent, plaintiff supervised subordinate employees, prepared performance evaluations for the foremen and maintenance workers at each of the three golf courses and made capital improvement requests. Plaintiff continued to perform these duties until 1987, when Brenda Veltri was appointed County Personnel Director. In various civil service documents, plaintiff had failed to disclose that he had been convicted previously of the crimes we described earlier in our opinion. However, Ms. Veltri had served as Personnel Director of the City of Newark between 1975 and 1984 and was thus thoroughly familiar with plaintiff's criminal record. Plaintiff's criminal history was brought to the attention of Ms. Veltri's supervisor and plaintiff was subsequently dismissed from both positions.
After his discharge, plaintiff instituted an action in lieu of prerogative writs, contending that he had been dismissed for political reasons. Defendants, the County of Essex and the County Executive, denied that allegation and argued that plaintiff was disqualified from employment by reason of N.J.S.A. 2C:51-2c. We will describe and analyze that statute in greater detail later in our opinion. It suffices here to note that N.J.S.A. 2C:51-2c bars individuals convicted of certain designated offenses from holding an "office or position of honor, trust or profit."
In granting defendants' motion for summary judgment, Judge Brochin rejected plaintiff's argument that the statutory ban is confined to highly placed executive or supervisory governmental positions. In that respect, the judge determined that the words "office, position and employment" are used interchangeably. *375 In a similar vein, Judge Brochin construed the qualifying phrase "honor, trust or profit" as including in its purview all governmental employment. Alternatively, the judge found that the job of greens superintendent constituted an "office or position of honor, trust or profit, ... as distinguished from mere employment," and was thus embraced within the statutory disqualification.

II.
We first address plaintiff's argument that the statutory disqualification is applicable only to a governmental "office" or "position" and does not permanently bar all public "employment." N.J.S.A. 2C:51-2 provides in pertinent part as follows:
a. A person holding any public office, position, or employment, elective or appointive, under the government of this State of any agency or political subdivision thereof, who is convicted of an offense shall forfeit such office or position if:
* * * * * * * *
(2) He is convicted of an offense involving or touching such office, position or employment.
* * * * * * * *
c. In addition to the punishment prescribed for the offense, and the forfeiture set forth in 2C:51-2a., any person convicted of an offense involving or touching on his public office, position or employment shall be forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions.
Plaintiff concedes that under N.J.S.A. 2C:51-2a he forfeited his employment with the City of Newark when he was convicted of "offense[s] involving or touching" his office. He contends, however, that, as greens superintendent, he was a mere "employee" of the County and not a holder of an "office" or "position" subject to the statutory disqualification. Plaintiff argues that, unlike subsection a, the forfeiture provision, which embraces "any public office, position, or employment," subsection c, the disqualification provision, applies only to an "office" or "position." We disagree.
*376 We recognize that many common law cases draw distinctions between offices, positions and employments. These decisions were exhaustively reviewed in DeMarco v. Bd. of Chosen Freeholders of Bergen County, 21 N.J. 136, 140-143 (1956), and need not be detailed here. We merely note that the common law differentiation between offices, positions, and employments has been characterized by our Supreme Court as "somewhat obscure and rather unfortunate," Miele v. McGuire, 31 N.J. 339, 347 (1960), and by academics as "seriously lacking in realistic usefulness," Glasser, "A New Jersey Municipal Law Mystery: What is a `Public Office?,'" 6 Rutgers L.Rev., 503 (1952); see also Note, "The Right of New Jersey's Governmental Officers and Employees to Recover for Back Pay When Illegally Dismissed or Suspended," 15 Rutgers L.Rev., 516, 522 (1961). It has been said that the distinction has "led to disparate treatment among comparables, now difficult to justify." Mastrobattista v. Essex County Park Commission, 46 N.J. 138, 142 (1965). See also State v. Goodman, 9 N.J. 569, 583 (1952).
Against this backdrop, we perceive no sound reason to resurrect an "empty [and] formalistic [classification] which obscures real legal utility and real legal value." Glasser, "A New Jersey Municipal Law Mystery: What is a `Public Office?'", supra, 6 Rutgers L.Rev. at 503. Rather, we are convinced that the Legislature intended to use the words "office," "position," and "employment" interchangeably. So posited, we are satisfied that the phrase "office or position" does not constitute a term of art with limited application.
The language employed in other subsections of N.J.S.A. 2C:51-2 bolsters this interpretation. For example, subsection a, the forfeiture provision, refers to anyone holding any "office, position or employment," but declares that such a person, when convicted of certain designated offenses, shall lose "such office or position." Obviously, the phrase "such office or position" was intended to refer back to the words "office, position or *377 employment" when applied to required forfeiture of a government post. This is made abundantly clear by subsection b(2) which states that "if the conviction is later reversed, [the defendant] shall be restored, if feasible, to his office, position or employment." Clearly, this provision for restoration discloses the drafters contemplated that a conviction would cause the forfeiture of an "employment" and not merely of an "office or position." We are convinced that the words "office," "position" and "employment" were also used interchangeably in subsection c.
Our construction of the statute is consonant with prior decisions interpreting this and other provisions mandating forfeiture of office and disqualification upon entry of a criminal or penal conviction. See, e.g., Bevacqua v. Renna, 213 N.J. Super. 554, 558-559 (App.Div. 1986); State v. Pitman, 201 N.J. Super. 21, 25 (App.Div. 1985); N.J. Turnpike Employees v. N.J. Turnpike Auth., 200 N.J. Super. 48, 53-54 (App.Div. 1985), certif. den. 101 N.J. 294 (1985); Newark v. Dept. of Civil Service, 68 N.J. Super. 416, 430-432 (App.Div. 1961); LaPolla v. Freeholders of Union Co., 71 N.J. Super. 264, 274-277 (Law Div. 1961); cf. Galloway v. Council of Clark Tp., 92 N.J. Super. 409, 422 (Law Div. 1966), aff'd 94 N.J. Super. 527 (App.Div. 1967). It also comports with the legislative intent "to preclude those who have once violated the public trust from [having] a second opportunity." State v. Musto, 187 N.J. Super. 264, 314 (Law Div. 1982), aff'd 188 N.J. Super. 106 (App.Div. 1983). Although the disqualification provision is undoubtedly harsh, see Moore v. Youth Correctional Institute, 230 N.J. Super. 374, 390 (App. Div. 1989) (Skillman, J.A.D., dissenting), its breadth and reach are relatively limited. It applies only to persons convicted of "an offense involving dishonesty or of a crime of the third degree or above," N.J.S.A. 2C:51-2a(1), or "of an offense involving or touching [their] office, position or employment[,]" N.J.S.A. 2C:51-2a(2). Persons convicted of other less serious offenses are eligible for public employment if they satisfy the requirements of N.J.S.A. 11A:4-11. In any event, the statute *378 was designed to protect the public, not the offender, and we construe it so as to advance this objective.

III.
We next turn to plaintiff's argument that Judge Brochin erroneously construed the qualifying phrase "honor, trust or profit" as referring to all governmental employment. The judge determined that the phrase was all-encompassing rather than limiting.
The term "office of honor, trust or profit" appeared in our earliest statutes providing for disqualification and has long been part of our law. Unfortunately, this geneology does not throw much light upon the meaning of the phrase. We have traced the statutory language to a law enacted in 1829, dealing with the bribery of judges. That statute provided that the briber "also shall forever be disqualified to hold any office of honor, trust or profit under this state." Harrison, Laws of New Jersey, 227. In Chapter 235 of the Laws of 1898, various sections provided that the offender "be forever disqualified from holding any office of honor, trust or profit...." L. 1898, c. 235, § 21 (judges), § 25 (legislators), § 28 (other officers). In 1913 the Legislature supplemented the 1898 act and included therein a provision for the forfeiture of public office upon criminal conviction. L. 1913, c. 74. This ultimately became N.J.S.A. 2A:135-9 and the provisions disqualifying judges, legislators and other public officials from holding office ultimately became N.J.S.A. 2A:93-5. The phrase "honor, trust or profit" was contained in the disqualification provision of the predecessor statute, N.J.S.A. 2A:93-5. Although the phrase has apparently appeared in every statute providing for disqualification from office since 1829, our research discloses no reported decision construing the term.
We are nevertheless convinced that the Legislature intended to disqualify convicted offenders from all forms of governmental employment. It is the public policy of this State *379 that "person[s] holding any public office, position or employment" must avoid committing serious criminal acts or offenses which involve or touch upon their governmental duties, or sacrifice their right to governmental employment. N.J. Turnpike Employees v. N.J. Turnpike Auth, supra, 200 N.J. Super. at 54. This is a harsh response to a problem serious enough to justify the harshness. Ibid. The purpose is to prevent miscreants and corrupt officials from again holding office. We interpret the statute accordingly.

IV.
Plaintiff would fare no better even were we to adopt his interpretation of the statutory language. It is plain from our review of the voluminous record that plaintiff, as greens superintendent, played a pivotal role in the management and supervision of Essex County's three golf courses and was not a mere employee.
Our courts have recognized that terms such as "public office" or "public position" should be broadly construed, "especially in dealing with questions of integrity in government." Bevacqua v. Renna, supra, 213 N.J. Super. at 560. Cf. Reilly v. Ozzard, 33 N.J. 529, 540-543 (1960); State v. Goodman, supra, 9 N.J. at 583-584. In contrast, the word "employment" has been interpreted as including only the most lowly jobs, those which are "occasional or temporary, or where the services to be performed [are] of a general character and such as may be from time to time directed by a superior, without being in any manner indicated by the special nature of the employment." Lewis v. Jersey City, 51 N.J.L. 240, 242 (Sup.Ct. 1889). Compare Serritella v. Water Commission, 128 N.J.L. 259 (Sup.Ct. 1942); Kreigh v. Freeholders of Hudson, 62 N.J.L. 178 (Sup.Ct. 1898); Evans v. Freeholders of Hudson, 53 N.J.L. 585 (Sup.Ct. 1891); Lewis v. Jersey City, supra, with Bd. of Ed. of Bayonne v. Bidgood, 11 N.J. Misc. 735 (Sup.Ct. 1933); Cavanaugh v. Essex, 58 N.J.L. 531 (Sup.Ct. 1896); MacDonald v. Newark, 55 *380 N.J.L. 267 (Sup.Ct. 1983), aff'd 56 N.J.L. 715 (E & A 1894). In the context of these decisions, it is clear that plaintiff held an "office or position" rather than mere employment.
In a similar vein, we conclude that, even under plaintiff's interpretation of the statutory language, the job of greens superintendent was an "office or position of honor, trust or profit." (Emphasis supplied). We have underscored the words "trust" and "profit." It is plain from the job description of greens superintendent that plaintiff was vested with substantial managerial and supervisory responsibilities. As such, plaintiff's position necessarily involved an element of "trust." Moreover, plaintiff received substantial compensation from the County. His position was thus one of "profit."
In sum, we are convinced, as was Judge Brochin, that plaintiff's convictions disqualified him from the post of greens superintendent. Accordingly, the summary judgment is affirmed.